The STATE of Texas

v.

Gabriela TERRAZAS, Appellee.

No. 1191–98.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 15, 1999.

Matthew DeKoatz, El Paso, for appellant.

John L. Davis, Assist. DA, El Paso, Matthew Paul, State's Atty., Austin, for the State.

*O P I N I O N*

McCORMICK, P.J., delivered the opinion of the Court in which MANSFIELD, KELLER, HOLLAND and KEASLER, JJ, joined.

Appellee was indicted for tampering with a governmental record by making false entries in an application for government benefits. After a hearing, the trial court entered an order suppressing appellee's statement taken by Oscar Rodriguez, an investigator for the Texas Department of Human Services, because the statement was involuntarily made. The State appealed the order. The Court of Appeals reversed and remanded the cause for trial, holding there was no reasonable view of the record that supported the trial court's granting of the motion to suppress. *State*

*v. Terrazas,* 970 S.W.2d 157 (Tex.App.—El Paso 1998). We granted appellee's ground for review in which she argues that the Court of Appeals failed to afford proper deference to the trial court's credibility determinations.

Rodriguez testified at the hearing on the motion to suppress. According to Rodriguez, appellee's ex-husband informed the Department of Human Services that their children were living with him for nine months in 1993. Rodriguez investigated the complaint and contacted appellee in January 1995. Rodriguez told her that he was reviewing her Aid to Families with Dependent Children case and food stamp case and that she needed to come to his office to clear up some problems. At the office, Rodriguez advised her that there were allegations about the custody of her children and where her children had been residing. He testified that he advised her of her rights. Rodriguez informed appellee that he had information that her children were not living with her and she was receiving government benefits, which was a violation of policy. Rodriguez testified as follows:

> "DEFENSE COUNSEL: Okay. Now, as far as on the voluntary statement here, what is claimed to be her voluntary statement—
>
> "RODRIGUEZ: Yes, sir.
>
> "Q: —as far as—is there anything more that you would like to say in your statement, the written-in information, as well as did you fail to report any changes between applications and interviews, if so what changes. Now, as far as the contents of those, did you tell her what to put in there?
>
> "A: No, I don't tell her what to put in there. I answer the questions, but I don't tell them what to put on there.
>
> "Q: What do you mean you answer the questions?
>
> "A: Well, if they ask me a question, you know, what do I do here, or on dates or whatever, but I don't exactly tell them what to put on there.

> "Q: Well, how on earth would they know what to put in there, then?
>
> "A: Well, I tell them, this is what the allegations are, and this is what has to go on the voluntarily [sic] statement. Verbatim, I do not.
>
> "Q: Okay. But you basically say, this is what has to be put in there, right?
>
> "A: That's correct.
>
> "Q: So you pretty much kind of explain to her what she is supposed to put in there, right?
>
> "A: That's correct."

Rodriguez testified that benefit recipients must report changes in circumstances within ten days, such as the fact that children are not residing in the home. He said that appellee was being prosecuted for failing to report the fact that her children were not residing with her.

On cross-examination by the prosecuting attorney, Rodriguez testified that he did not promise appellee anything in return for the statement, he did not threaten her, and she had the opportunity to read the statement and make changes. Appellee's statement included the following:

> "I did not report that my kid where living with there father for the month of June thr. Sept. 93. In Nov. 93 Martin return to live with his father. In Aug. 94 Martin came to live with me until Nov. 94.... I did not report thise information within 10 days. I should have reported this information. I used my food stamp card for Dec. 94." [sic throughout]

Rodriguez testified that appellee provided that information, wrote the statement, and signed it. The trial court asked Rodriguez about what happened:

> "THE COURT: What part of that stuff is the stuff that you told her had to be in there?
>
> "RODRIGUEZ: I'm sorry, Your Honor?
>
> "THE COURT: I thought your previous testimony was that some of the stuff

that was in there was stuff that you told her had to be in there. What of that information did you tell her had to be in there?

"A: Well, the allegations that—

"THE COURT: Well, just read the part of the statement that you told her had to be in there.

"A: I did not report this information within ten days.

"THE COURT: Okay.

The prosecuting attorney continued the cross-examination:

"PROSECUTING ATTORNEY: Sir, did you ask her questions about where her children were residing during these dates between March 17 th of 1993 and the taking of this statement on January 25 th of 1995?

"RODRIGUEZ: Yes, I did.

"Q: And this was after you warned her of her rights?

"A: That's correct.

"Q: Okay. All those rights that are on the warning form, the advisement of waiver of rights form which is form 4801?

"A: That's correct.

"Q: Did she advise you that her children were, in fact, with the father of the children through those months that are stated here, of June through September, 1993, and November of 1993?

"A: Yes, she did.

"Q: Okay. And then in stating on there those things that the judge has just asked you, you said that had to be on the statement, correct?

"A: Yes.

"Q: That was in response to a question, did you fail to report any changes—

"A: She failed to report within the ten days.

"Q: Okay. And then it was—that was what you were referring to that had to be on here?

"A: Yes.

"Q: Okay. Did she advise you that that was, in fact, correct?

"A: Yes, she did."

At the end of the hearing, the judge stated he was suppressing appellee's written statement because it was involuntary.

After setting out the law regarding voluntariness of statements, the Court of Appeals stated:

"[Appellee] suggests that Rodriguez told [her] what to put in her statement and this constituted official overreaching or coerciveness. At the hearing, the trial court showed some interest in this contention. However, the evidence indicates that [appellee] agreed at the time that these contentions were true. If a confession relates what is told to a peace officer, the confession is still voluntary albeit it is not in the exact words of the defendant.

In the present case, we are unable to find any reasonable view of the record that supports the court's granting of the motion to suppress. As Rodriguez was the only witness to relate the events surrounding the taking of the statement, we are unable to find any element of coercion that overrode [appellee's] exercise of free will. Accordingly, it was an abuse of discretion to grant [appellee's] motion to suppress the statement." *Terrazas,* 970 S.W.2d at 162.

■ Substantive constitutional law prohibits the government from using an involuntary confession against an accused with the test for voluntariness being whether the confession is the product "of an essentially free and unconstrained choice by its maker." *Schneckloth v. Bustamonte,* 412 U.S. 218, 225, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Alvarado v. State,* 912 S.W.2d 199, 211 (Tex.Cr.App.1995) (statement is involuntary "only if there was official, coercive conduct of such a nature that any statement obtained thereby was unlikely to have been the product of an essentially free and unconstrained choice by its maker"). Whether the confession is true or false is irrelevant to a voluntariness deter-

mination because it is the methods used to extract an involuntary confession that offend constitutional principles. See *Lego v. Twomey*, 404 U.S. 477, 92 S.Ct. 619, 624 fn. 12, 625 fn. 13, 30 L.Ed.2d 618 (1972).

Our current statutory law set out in Article 38.22, Section 6, V.A.C.C.P., for litigating pretrial the voluntariness of a confession can be traced back to the United States Supreme Court's decision in *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 1780–88, 12 L.Ed.2d 908 (1964). *Jackson* invalidated on Fourteenth Amendment due process grounds the "New York rule" for litigating the voluntariness of a confession. See *Jackson*, 84 S.Ct. at 1777–91; *State v. Ibarra*, 953 S.W.2d 242, 252–53 (Tex.Cr.App.1997) (McCormick, P.J., dissenting).

Texas apparently followed the "New York rule" which authorized a trial court to suppress a confession on voluntariness grounds only if the undisputed facts showed its involuntariness; otherwise, usually when disputed fact issues on the voluntariness question existed, a trial court had no discretion but to submit the voluntariness question to the jury. *Jackson*, 84 S.Ct. at 1780–88; *Lego*, 92 S.Ct. at 622–23; *Ibarra*, 953 S.W.2d at 252 (McCormick, P.J., dissenting) ("New York rule" provided that if there existed a factual dispute on the voluntariness of a confession, trial court had no discretion but to submit the issue to the jury); see also *Prince v. State*, 155 Tex.Crim. 108, 231 S.W.2d 419, 420 (1950) (trial court could suppress confession only if "undisputed facts in criminal case show that confession was not and could not have been voluntarily made").

The rationale of *Jackson* was that juries could not be trusted to decide voluntariness questions fairly and accurately. See *Jackson*, 84 S.Ct. at 1777–91; *Ibarra*, 953 S.W.2d at 252 (McCormick, P.J., dissenting).

Soon after the Supreme Court decided *Jackson*, this Court decided *Lopez v. State* in which the Supreme Court had granted certiorari and then remanded to this Court in light of *Jackson*. *Lopez v. State*, 384 S.W.2d 345, 347 (Tex.Cr.App.1964). In *Lopez* this Court set out court-made procedures consistent with *Jackson* for litigating the voluntariness of a confession. *Lopez*, 384 S.W.2d at 348–49. These procedures empowered a trial court to suppress a confession without submitting the issue to the jury when "the evidence present[ed] a fair question as to its voluntariness, as where certain facts bearing on the issue are in dispute or where reasonable men could differ over the inference to be drawn from undisputed facts." *Lopez*, 384 S.W.2d at 349 (Woodley, P.J., concurring); Note: *Procedure–Defendant Entitled To Hearing On Voluntariness Of Confession Before It Goes To the Jury*, 43 Tex.L.Rev. 396, 396–99 (1965).

In response to *Jackson* and *Lopez* our Legislature enacted what is now Article 38.22, Section 6,[1] which sets out the procedures for litigating voluntariness claims in "all cases[[2]] where a question is raised as to the voluntariness of a statement of an accused." See *Ibarra*, 953 S.W.2d at 252–53 (McCormick, P.J., dissenting). The typical scenario for litigating voluntariness questions usually involves a defendant presenting evidence[3] that the police used un-

1. Acts 1965, 59th Leg., vol. 2, p. 317, ch. 722 (permitting submission of "voluntariness" issue to jury only after "confession or statement" had "been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury").

2. Article 38.22 as enacted in 1965 only applied if the defendant "was in jail or other place of confinement or in the custody of an officer." Acts 1965, 59th Leg., vol. 2, p. 317,

ch. 722. In 1967 what is now Article 38.22, Section 6, was rewritten to apply to "all cases where a question is raised as to the voluntariness of a confession or statement." Acts 1967, 60th Leg., p. 1740, ch. 659, Section 23; but see *Nenno v. State*, 970 S.W.2d 549, 556 (Tex.Cr.App.1998) ("Article 38.22 applies only to persons in custody").

3. If a defendant testifies pretrial, "the scope of cross-examination [is] limited to the issue of voluntariness, and the fact that the defen-

constitutional methods to obtain a confession with the prosecution controverting this evidence with evidence that the police used constitutional methods to obtain the confession. See, e.g., *Alvarado,* 912 S.W.2d at 210–211 (defendant testified pretrial that police coerced his confession which the police denied); *Lego,* 92 S.Ct. at 628 (Brennan, J., dissenting) (typical case normally presents factfinder "with conflicting testimony from the defendant and law enforcement officers about what occurred during the officers' interrogation of the defendant").

■ When a defendant presents evidence raising a voluntariness question, the prosecution must controvert that evidence and prove voluntariness by a preponderance of the evidence. See *Alvarado,* 912 S.W.2d at 211; *Muniz v. State,* 851 S.W.2d 238, 252 (Tex.Cr.App.), cert. denied, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed.2d 82 (1993) (prosecution need not rebut defendant's "assertions" but only controvert them). However, the prosecution is not put to this burden unless a defendant presents evidence that raises a voluntariness question. See Article 38.22, Section 6, (not applicable unless "a question is raised as to the voluntariness of a statement"); *Romero v. State,* 800 S.W.2d 539, 544 fn. 7 (Tex.Cr.App.1990) ("voluntariness must be put in issue by facts before it is an issue"); *Dunn v. State,* 721 S.W.2d 325, 336 (Tex. Cr.App.1986); compare Article 38.22, Section 7, V.A.C.C.P., (trial court not required to submit voluntariness question to jury unless "issue is raised by the evidence").

■ Since appellee won in the trial court and the trial court made no express or written fact findings, then the Court of Appeals was required to imply all necessary fact findings that would support the trial court's ruling. And the Court of Appeals was required to defer to these implied fact findings that the record supports especially when these findings are based on an evaluation of credibility and demeanor. See *Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Cr.App.1997). In other words, since appellee won in the trial court, the evidence must be viewed in the light most favorable to the trial court's ruling that appellee's statement is involuntary.

Appellee apparently argues the Court of Appeals misapplied this standard of review by engaging in an improper review of the facts.[4] Appellee claims portions of Rodriguez' testimony support a finding that Rodriguez told appellee "what had to be" or "what to put" in her statement. Appellee also claims the Court of Appeals was required to disregard any other portions of Rodriguez' testimony that contradicted this implied finding.

■ And, we agree. Although we do not read the Court of Appeals' opinion as disregarding this implied finding, the Court of Appeals apparently relied on other portions of Rodriguez' testimony to the effect that appellee "agreed at the time that these contentions were true." *Terrazas,* 970 S.W.2d at 162. However, as a matter of substantive constitutional law, the Court of Appeals erred to rely on this testimony in deciding the voluntariness question because this testimony is irrelevant to a voluntariness determination. See *Lego,* 92 S.Ct. at 624 fn 11 (truth or falsity of statement irrelevant to voluntariness determination).

■ Based on the foregoing, the essential implied fact finding to which we must defer is that Rodriguez told appellee "what had to be" in her statement. However, since the ultimate resolution of the voluntariness question does not turn on this implied fact finding, we may review *de novo* the trial court's and the Court of

---

dant testifies [pretrial does] not compel him to take the stand at the trial on the merits." 43 Tex.L.Rev. at 398 and authorities cited therein.

4. Appellee argues this case as if we were an intermediate appellate court reviewing the trial court's ruling rather than a discretionary court reviewing the decision of the Court of Appeals.

Appeals' legal ruling on the voluntariness question. See *Guzman*, 955 S.W.2d at 89 (intermediate appellate courts and this Court may review *de novo* "mixed questions of law and fact" the ultimate resolution of which does not turn on an evaluation of credibility or demeanor).[5]

■ Relying on this Court's decision in *Cruz v. State*, appellee argues the implied fact finding that Rodriguez told her "what had to be" in her statement provides a sufficient basis to support the trial court's legal ruling that appellee did not provide a voluntary statement because this statement was really Rodriguez' statement and not hers. See *Cruz v. State*, 586 S.W.2d 861 (Tex.Cr.App.1979). We disagree.

In *Cruz* this Court noted the facts and circumstances were "unique" which the Court "trusted" would "never again be presented." *Cruz*, 586 S.W.2d at 862–65. In *Cruz* the defendant's lawyer concocted a scheme to render a voluntary statement inadmissible. *Id.* When this lawyer learned the defendant was a suspect in a murder case, this lawyer prepared a statement inculpating the defendant. *Id.* The lawyer then had the defendant sign the statement without reading it. *Id.* When the lawyer and the defendant went to the police station, a detective wanted to take the defendant's statement. *Id.* The lawyer indicated that would be unnecessary and gave the detective the statement. *Id.* When the detective began reading the defendant his rights, the lawyer interrupted and said the defendant already knew his rights. *Id.* The defendant then signed the statement again without reading it. *Id.*

The defendant later moved to suppress the statement. *Id.* The defendant's lawyer testified his "three-fold purpose" was to

render the statement inadmissible by having the defendant sign it without reading it, by deliberately failing to read the defendant his rights, and by making the statement "his own version" of what the defendant told him. *Id.* The trial court ruled the statement admissible. *Id.* However, on direct appeal this Court decided as a matter of state law that a proper predicate had not been laid for the admission of the statement primarily because the statement was not "made by the accused." *Id.*

This case clearly is not like *Cruz*. Even though Rodriguez told appellee "what had to be" in her statement, the statement nevertheless was made by appellee. There is no evidence to support a finding that Rodriguez prepared a statement which he had appellee sign without reading it. See *Guzman*, 955 S.W.2d at 89 (appellate courts should defer to fact findings that the record supports).

More important *Cruz* did not decide the defendant's statement in that case was involuntary[6] which is the claim appellee makes in this case. We decline to extend *Cruz* beyond the unique facts and circumstances of that case.

Viewing the evidence in the light most favorable to the trial court's ruling, we decide the Court of Appeals correctly decided the trial court's legal ruling on the voluntariness question was erroneous. Rodriguez telling appellee in a noncustodial setting "what had to be" in her statement is not the type of practice that has been held to be inherently coercive as to make a statement involuntary. See, e.g., *Michigan v. Tucker*, 417 U.S. 433, 94 S.Ct. 2357, 2360–65, 41 L.Ed.2d 182 (1974) (no one could contend the interrogation faced by the defendant bore any resemblance to

5. An example where the resolution of the ultimate question of voluntariness would turn on an implied fact finding involving an evaluation of credibility and demeanor would be where a trial court grants a motion to suppress on conflicting testimony that the police tortured a confession out of a suspect. In this example the trial court's implied fact finding that the confession was obtained by torture

would be dispositive of the voluntariness issue. See *Guzman*, 955 S.W.2d at 89.

6. On the contrary, the evidence in *Cruz* supports a finding of voluntariness in the sense that the defendant was not coerced or forced to sign the statement.

the historical practices at which the right against compulsory self-incrimination was aimed, "a recurrence of the Inquisition and the Star Chamber, even if not in their stark brutality"); *Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 1770, 16 L.Ed.2d 895 (1966) (defendant's will overborne by "sustained pressures upon him" such as repeated interrogations over sixteen days without being advised of rights and without being allowed to see anyone or make telephone calls); Note: *Evidence–Criminal Law–Constitutional Law–Due Process–Confessions Judge and Jury–Determination of Preliminary Fact of Voluntariness of Confession*, 3 Baylor L.Rev. 561, 563–65 (1951) (inherently coercive practices are: subjection to persistent and protracted questioning, threats of mob violence, unlawful detention incommunicado without advice of counsel or friends, and taking at night to lonely and isolated places for questioning).

Finally, appellee also appears to argue the trial court's ruling suppressing her statement should be upheld because the trial court was not required to believe *any* of Rodriguez' testimony. Appellee seems to claim the prosecution with the burden to prove voluntariness by a preponderance of the evidence carried the risk of nonpersuasion on the voluntariness question in the event the trial court did not believe any of Rodriguez' testimony.

We agree that the trial court did not have to believe any of Rodriguez' testimony. See *Guzman*, 955 S.W.2d at 89. However, this does not require suppression of appellee's statement. The prosecution is not put to its burden to prove voluntariness by a preponderance of the evidence until a defendant presents some evidence raising a question of voluntariness. See Article 38.22, Section 6; *Romero*, 800 S.W.2d at 544 fn. 7; *Dunn*, 721 S.W.2d at 336.

■ We have already essentially decided that Rodriguez' testimony, viewed in the light most favorable to the trial court's ruling, did not raise a voluntariness question, and appellee presented no other evidence that raised a voluntariness question. Under these circumstances, the prosecution never assumed the burden to prove voluntariness or to controvert evidence of involuntariness, so it never assumed the risk of nonpersuasion on the voluntariness question in the event the trial court did not believe any of Rodriguez' testimony. See *Muniz*, 851 S.W.2d at 252 (prosecution need not rebut defendant's "assertions" of involuntariness, but only controvert them).

■ We also note that in these circumstances appellee would not be entitled to a jury instruction on voluntariness. See Article 38.22, Section 7; *Butler v. State*, 872 S.W.2d 227, 236 (Tex.Cr.App.1994), cert.denied, 513 U.S. 1157, 115 S.Ct. 1115, 130 L.Ed.2d 1079 (1995) (before requested jury instruction on voluntariness is required, some evidence must be presented to jury which raises the issue of voluntariness). For essentially the same reasons appellee was not entitled to a favorable ruling from the trial court on the voluntariness question in the event the trial court did not believe any of Rodriguez' testimony.

■ Finally, questions have been raised on whether Article 38.22, Section 6, even applies to this case and whether this Court should *sua sponte* remand this case to the trial court for findings of fact and conclusions of law. For example, our decision in *Nenno* suggests Article 38.22 applies only to custodial statements. See *Nenno*, 970 S.W.2d at 556, Footnote 2 of this Opinion. However, Article 38.22, Section 6, literally applies to "all cases where a question is raised as to the voluntariness of a statement of an accused." *Nenno* is overruled to the extent it decides Article 38.22, Section 6, applies only to custodial statements.

■ In addition, Article 38.22, Section 6, requires the trial court to "enter an order" containing its findings of fact and conclusions of law only if it decides the statement was voluntarily made. Since

the trial court in this case decided appellee's statement was involuntary, then it was not required to "enter an order" containing its findings of fact and conclusions of law.

 Assuming Article 38.22, Section 6, required the trial court to enter such an order, we are not inclined to exercise our discretion to remand this case *sua sponte* to the trial court for findings of fact and conclusions of law. Neither party has complained about the absence of findings and conclusions. And, nothing in *Jackson v. Denno* requires them. The "right" to findings and conclusions is a statutory "right" which is forfeited by a party's failure to insist upon its implementation. See *Marin v. State*, 851 S.W.2d 275, 278–79 (Tex.Cr.App.1993).

Judge Price's dissenting opinion claims the "voluntariness" determination turns on an evaluation of credibility and demeanor. *Terrazas*, at 729–30. This dissenting opinion claims the "controversy at issue here is not that the statement was made, but rather what was meant by the statement. More aptly put, what did Rodriguez mean when he made the statement, and given the circumstances of the questioning, what did [appellee] think Rodriguez meant when she heard the statement." *Id.*

Assuming these considerations are relevant to a "voluntariness" determination, the meaning of Rodriguez' statement to appellee telling her "what had to be" in her statement seems plain on its face not susceptible to differing interpretations, and the dissenting opinion suggests no interpretation of or inference from Rodriguez' statement that would support a finding of "involuntariness" or improper overreaching by Rodriguez that overbore appellee's will. And, since appellee did not avail herself of her opportunity to testify at the suppression hearing, we will not speculate on what she thought Rodri-

guez meant "when she heard the statement." See *Guzman*, 955 S.W.2d at 89 (requiring appellate courts to defer to trial court's implied findings that the record supports).

Viewing the evidence in the light most favorable to the trial court's ruling as required by *Guzman*, we have decided Rodriguez telling appellee "what had to be" in her statement did not constitute wringing the statement out of appellee against her will. This essentially is the issue upon which this case turns.

It is possible reasonable minds might differ on this issue but the state action in this case does not rise anywhere near to the level of the police misconduct and overreaching in the "involuntary confession" cases cited in this opinion and the authorities upon which these cases relied. And the dissent does not cite a single controlling case holding on facts similar to these that the defendant's statement was involuntary. This further causes the Court to believe it has reached a fair result in this case and one in accordance with the law.

 The dissenting opinion appears to concede the lack of state action that would support a finding of overreaching or misconduct by Rodriguez that overbore appellee's will. *Terrazas*, at 730. Rather the dissenting opinion seems to focus almost entirely on the "characteristics of the accused" such as "the age of the accused, the accused's lack of education or low intelligence[7] and the lack of any advice to the accused of [her] constitutional rights." *Id.* The dissenting opinion apparently claims these characteristics together with "the details of the interrogation" support a finding of involuntariness. *Id.*

However, factors bearing on the characteristics of the accused are irrelevant in the absence of any state action that would

7. Of course, since appellee did not testify at the suppression hearing, the record contains

no evidence bearing on any of these issues.

support a finding of police misconduct or overreaching. See *Colorado v. Connelly*, 479 U.S. 157, 107 S.Ct. 515, 520–21, 93 L.Ed.2d 473 (1986) ("involuntary confession" cases focus on "crucial element of police overreaching").[8] As the dissenting opinion fails to identify any "crucial element of police overreaching" in this case, it is unnecessary to consider any "characteristics of the accused" which the record would support.

In summary, viewing the evidence in the light most favorable to the trial court's ruling as required by *Guzman*, we decide Rodriguez telling appellee "what had to be" in her statement does not support a finding or legal conclusion of "involuntariness" or state action that overbore appellee's will. This case is not much different from an officer taking a defendant's oral statement, reducing it to writing and then having the defendant sign the statement.

We also decide the prosecution never assumed the burden to prove voluntariness because appellee failed to present any evidence raising a question of voluntariness or supporting a finding of involuntariness that the prosecution was required to controvert. The argument that we should uphold the trial court's ruling because the trial court did not have to believe *any* of Rodriguez' testimony would permit suppression of statements and confessions when there is no evidence to support a finding of involuntariness. This is not the rule either as a matter of state law or federal constitutional law. Our decision in this case does not, as the dissenting opinion claims, require the trial court "as a

matter of law to [have believed] all of Rodriguez' testimony." *Terrazas*, at 731.

The judgment of the Court of Appeals is affirmed.

PRICE, J., filed a dissenting opinion joined by MEYERS and JOHNSON, JJ.

WOMACK, J., filed a dissenting opinion in which JOHNSON, J., joined.

PRICE, J. delivered a dissenting opinion in which MEYERS and JOHNSON, J.J., joined.

I dissent. The majority asserts that it is justified in conducting a *de novo* review of this mixed question of law and fact because its resolution does not turn on an evaluation of credibility and demeanor. According to the majority, the essential implied fact finding to which we must defer is that Rodriguez told appellee "what had to be" in her statement. The majority avers that since the ultimate resolution of the voluntariness question does not turn on this implied fact finding, we may review *de novo* the trial court's and the court of appeal's legal ruling on the voluntariness question. *Ante*, at 726. This is incorrect. The controversy at issue here is not that the statement was made, but rather what was meant by the statement. More aptly put, what did Rodriguez mean when he made the statement, and given the circumstances and details of the questioning, what did appellant think Rodriquez meant when she heard the statement.[1] The reso-

---

8. The facts of this case also do not rise anywhere near to the level of the "involuntary confession" cases cited in *Connelly*, 107 S.Ct. at 520 fn. 1.

1. This issue calls to mind the film "Let Him Have It," which was based on the famous "Derek Bentley Confession" case in post WWII England.

Two boys who were trying to break into a building were cornered on a rooftop by a policeman. One of the boys had a gun. The policeman calmly reached out his hand and asked the boy to hand over the gun.

The other boy said, "Let him have it." The boy with the gun pulled the trigger and killed the officer.

What did the phrase, "Let him have it," really mean? There are two possibilities: "Hand over the gun!" Or, "Shoot him!" A British jury decided upon the second possibility and the boy, a retarded young man named Derek Bentley was convicted of murder and hanged. Roger Ebert, *Let Him Have It* (visited June 3, 1999) <http://www.suntimes.com/ebert/ebert_reviews/1992>.

lution of this controversy must turn on an evaluation of credibility and demeanor.

In actuality, the majority appears to be attempting to avoid the dictates of *Guzman* by reasoning that the appellant failed to present evidence raising a voluntariness question. To further support this analysis, it points to the absence of evidence in the record of any type of practice by Rodriguez that has historically been held inherently coercive. *Ante*, at 727. In other words, the majority reasons that the defendant failed to prove involuntariness, and therefore did not raise it. In doing so, it creates a false dichotomy wherein the appellate courts are required to determine the factual merits of a case before they determine which standard of review to apply. I too recognize that the appellant was not subject to threats of mob violence, persistent and protracted questioning, torture, a recurrence of the Inquisition or the Star Chamber. However, the aforementioned practices do not constitute an exclusive list of circumstances which would render a statement involuntary. Quite the contrary. In *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), the Supreme Court explained that when determining whether a defendant's will was overborne in a particular case, courts should assess the totality of all of the surrounding circumstances—both the characteristics of the accused and the details of the interrogation. *Id* at 226, 93 S.Ct. at 2047. The Court explained that numerous factors may be considered including: the age of the accused, the accused's lack of education or low intelligence and the lack of any advice to the accused of his or her constitutional rights. *Id.* (citations omitted).

Appellate courts should afford almost total deference to a trial court's determination of the historical facts supported by the record, especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.

1997). Appellate courts should afford the same amount of deference to a trial court's ruling on the application of law to fact, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor. *Id.* The trial judge is the sole and exclusive trier of fact and judge of the credibility of the witnesses as well as the weight to be given their testimony at a hearing on a motion to suppress. *Romero*, 800 S.W.2d at 543.

Rodriguez testified that when taking a statement he tells the person that "this is what the allegations are, and this is what has to go on the voluntarily [sic] statement." Defense counsel asked, "But you basically say, this is what has to be put in there, right?" Rodriguez said that was correct. The trial court asked Rodriguez what he told Appellee had to be in the statement. Rodriguez answered, "I did not report this information within ten days." Although Rodriguez explained that Appellee told him that she did not report within ten days and that he just told Appellee that she needed to put that in the statement, the trial court could have disbelieved the explanation.

The State had the burden to prove by a preponderance of the evidence that Appellee's statement was given voluntarily. *Alvarado v. State*, 912 S.W.2d 199, 211 (Tex. Crim.App.1995). By ruling that Appellee's statement was involuntary, the trial court concluded that the State had not met its burden. The trial court's ruling was correct if the judge did not believe Rodriguez, especially Rodriguez' explanation about what he meant by his testimony that he told Appellee what to put in the statement. *Compare Romero*, 800 S.W.2d at 543 (trial court's suppression of statements correct under theory that judge could have believed defendant, rather than the police officer or justice of the peace) *with State v. Skiles*, 938 S.W.2d 447, 451–52 (Tex.Crim. App.1997) (trial court's suppression of evidence on basis of illegal roadblock was erroneous, because trial court found that

all of the police officer's testimony was truthful, and that testimony showed there was no roadblock). Under the State's argument and the Court of Appeals' holding, the trial court would have been required as a matter of law to believe all of Rodriguez' testimony. There is no such requirement.

I would reverse the judgment of the Court of Appeals, and affirm the trial court's order suppressing the statement.

WOMACK, J., filed a dissenting opinion in which JOHNSON, J., joined.

I respectfully suggest that the Court has overlooked the "totality of the circumstances" test that the Due Process Clause requires us to use. The Court considers only one issue of fact to be "essential"— whether Investigator Rodriguez told the appellee what had to be in her statement. *Ante* at 726. And in the next breath the Court says that the case does not turn on that "essential" fact. *Ibid.* This is because, the Court tells us, even if the investigator told the appellee what had to be in her statement, this "is not the type of practice that has been held to be inherently coercive [so] as to make a statement involuntary." *Id.* at 727.

But this is only half of the due-process analysis, and the irrelevant half at that. While it is correct that due process is denied when a statement that has been obtained by inherently coercive methods is introduced,[1] it is also true that due process is denied when a statement that was involuntary for any reason is introduced. The extension of the due-process protection past the "inherently coercive" practices began in *Fikes v. Alabama*, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246 (1957). From the perspective of twenty years of due-process cases, the Court found the introduction of Fikes's statement denied due process even though it was not obtained by any inherently coercive practice. "There is no evidence of physical brutality, and particular elements that were present in other cases in which this Court ruled that a confession was coerced do not appear here. On the other hand, ...[t]he objective facts in the present case are very much like that in [another case], while the present petitioner was a weaker and more susceptible subject. ... The totality of the circumstances that preceded the confessions in this case goes beyond the allowable limits." *Id.* at 197, 77 S.Ct. 281. *Accord, e.g., Haynes,* 373 U.S. at 513–14, 83 S.Ct. 1336 ("whether the confession was obtained by coercion

---

1. The "inherently coercive" due process cases are some earlier opinions that contain language that suggests that the nature of official misconduct may alone require exclusion of resulting statements. For example, in *Ashcraft v. Tennessee*, 322 U.S. 143, 154, 64 S.Ct. 921, 88 L.Ed. 1192 (1944), the Court said that the prolonged interrogation was "so inherently coercive that its very existence is irreconcilable with the possession of mental freedom by a lone suspect against whom its full coercive force is brought to bear." Such cases involve "physical violence or threat of it by the custodian of a prisoner during detention." *Stein v. New York*, 346 U.S. 156, 182, 73 S.Ct. 1077, 97 L.Ed. 1522 (1953). When such misconduct is present, "there is no need to weigh or measure its effects on the will of the individual victim." *Ibid. See e.g., Brooks v. Florida*, 389 U.S. 413, 88 S.Ct. 541, 19 L.Ed.2d 643 (1967) (keeping suspect naked in small cell without food and water); *Beecher v. Alabama*, 389 U.S. 35, 88 S.Ct. 189, 19 L.Ed.2d 35 (1967) (holding gun to suspect's head);

*Haynes v. Washington*, 373 U.S. 503, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963) (slapping suspect); *Reck v. Pate*, 367 U.S. 433, 81 S.Ct. 1541, 6 L.Ed.2d 948 (1961) (depriving suspect of food and sleep, moving suspect from place to place for interrogation by different people during extended, incommunicado detention); *Payne v. Arkansas*, 356 U.S. 560, 78 S.Ct. 844, 2 L.Ed.2d 975 (1958) (depriving suspect of food, threatening suspect with mob violence); *Malinski v. New York*, 324 U.S. 401, 65 S.Ct. 781, 89 L.Ed. 1029 (1945) (depriving suspect of clothing); *Ashcraft*, 322 U.S. at 143, 64 S.Ct. 921 (interrogating suspect for 36 continuous hours); *White v. Texas*, 310 U.S. 530, 60 S.Ct. 1032, 84 L.Ed. 1342 (1940) (questioning suspect in isolated place); *Chambers v. Florida*, 309 U.S. 227, 60 S.Ct. 472, 84 L.Ed. 716 (1940) (interrogating incommunicado suspect for 5 days, culminating in all-night interrogation, and threatening suspect with mob violence); *Brown v. Mississippi*, 297 U.S. 278, 56 S.Ct. 461, 80 L.Ed. 682 (1936) (whipping suspect).

or improper inducement can be determined only by an examination of all of the attendant circumstances ... a totality of circumstances evidencing an involuntary written admission of guilt"). By limiting its due process analysis to the question of whether inherently coercive practices were used, the Court does what has been recognized as insufficient since *Fikes* was decided.[2]

The Court of Appeals recognized that the totality of the circumstances must be considered, but the scope of its review was rather crabbed. It mentioned only a few, extreme circumstances that might make a statement involuntary,[3] none of which appear in this case. It then focused on the one issue that the Court today finds both essential and not essential: whether the investigator told the appellant what to put in her statement.[4]

The circumstances that may be considered are not so limited. Those that the Supreme Court and other courts have addressed may be grouped under the headings "conduct of the police" and "characteristics of suspects."

### Conduct of police

In addition to the threats and physical brutality which this Court has discussed today under their usual label of "inherently coercive" misconduct, courts have considered:

● intent of officers to extract a confession, *Spano v. New York*, 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (questioning suspect after indictment showed officers' intent was to extract confession rather than solve crime or absolve suspect);

● whether suspect was apprised of rights, *Procunier v. Atchley*, 400 U.S. 446, 91 S.Ct. 485, 27 L.Ed.2d 524 (1971); *compare, e.g., Davis v. North Carolina*, 384 U.S. 737, 86 S.Ct. 1761, 16 L.Ed.2d 895 (1966), *with Moran v. Burbine*, 475 U.S. 412, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) (no due process violation when police lied to attorney to keep him away from suspect when suspect had been told of right to counsel and did not ask to see him);

● length of detention and interrogation, *compare Ashcraft*, 322 U.S. at 154, 64 S.Ct. 921 (prolonged interrogation), *with Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (detained only a few days) *and Haley v. Ohio*, 332 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) (questioned only a few hours);

● isolation of suspect from family or friends, *see e.g., Fikes*, 352 U.S. at 191, 77 S.Ct. 281.

● access to counsel, *see Darwin v. Connecticut*, 391 U.S. 346, 88 S.Ct. 1488, 20 L.Ed.2d 630 (1968);

● provision of food, drink, and other amenities, *compare, e.g., Payne*, 356 U.S. at 560, 78 S.Ct. 844 (two sandwiches in 40 hours), *with Crooker v. California*, 357 U.S. 433, 78 S.Ct. 1287, 2 L.Ed.2d 1448 (1958) (suspect fed shortly after arrest, questioned intermittently, and given coffee and permission to smoke);

● threats other than violence, *compare Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961) (confession involuntary when police told suspect they would take his wife into custody), *and Lynumn v. Illinois*, 372 U.S. 528, 83 S.Ct. 917, 9 L.Ed.2d 922 (1963) (confession involuntary

---

**2.** By relying on a student note that was published in 1951, *see ante* at 727 the Court may have overlooked *Fikes* and the subsequent decisions on the voluntariness of statements. This Court has recognized the "totality of circumstances" test for at least 28 years. *See Encina v. State*, 471 S.W.2d 384 (Tex.Cr.App. 1971).

**3.** "Some factors in determining if an accused's will has been overborne are: length of detention; incommunicado or prolonged interrogation; denying access of a family member; refusing a defendant's request to telephone a lawyer or family member; and physical brutality." *State v. Terrazas*, 970 S.W.2d 157, 162 (Tex.App.—El Paso, 1998).

**4.** *Ibid.*

when police told suspect confession would produce help and recommendation of leniency, but denial would result in loss of welfare payments and custody of children), *with United States v. Braxton,* 112 F.3d 777 (4th Cir.1997) (*en banc*) (statement not involuntary because officer told suspect he was facing 5 years for not coming clean), *and United States v. Mendoza,* 85 F.3d 1347 (8th Cir.1996) (statement not involuntary when suspect was told she would be arrested immediately if she did not cooperate);

• promises, *Arizona v. Fulminante,* 499 U.S. 279, 285, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991) (promise is merely a factor in totality of circumstances), *disclaiming Bram v. United States,* 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897) (confessions obtained by direct or implied promises, however slight, were inadmissible); *Williams v. United States,* 328 F.2d 669 (5th Cir.1964) (promise to try to get state charges dropped made confession involuntary); *Ex parte Price,* 725 So.2d 1063 (Ala. 1998) (promise to tell prosecutor of cooperation did not make statement involuntary);

• deception, *compare Frazier v. Cupp,* 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969) (falsely telling suspect that accomplice had confessed was relevant but not sufficient to make otherwise voluntary confession inadmissible), *with Leyra v. Denno,* 347 U.S. 556, 74 S.Ct. 716, 98 L.Ed. 948 (1954) (when suspect asked for doctor to treat sinus condition, police provided psychiatrist who obtained admissions), *and Spano v. New York,* 360 U.S. 315, 79 S.Ct. 1202, 3 L.Ed.2d 1265 (1959) (officer, who was close friend of suspect, said his failure to get confession would cause loss of his job and disaster for his family). When an officer asked a fondling suspect to come to the police station to file a runaway child report, told the suspect that he only wanted to help whoever needed help, told the suspect that he could get a court order for a polygraph test, asked mock-polygraph questions, and falsely told the suspect that activities in his house had been recorded

under an electronic surveillance warrant, the resulting confession was involuntary. *Cole v. State,* 923 P.2d 820 (Alaska Ct.App. 1996); and

• failure to tape-record interrogation, *Commonwealth v. Diaz,* 422 Mass. 269, 661 N.E.2d 1326 (1996) (noting that two states' courts require recording).

### Characteristics of suspects

The law "does not justify a conclusion that a defendant's mental condition, by itself and apart from its relation to official coercion, should ever dispose of the inquiry into constitutional 'voluntariness.' ...[W]hile mental condition is surely relevant to an individual's susceptibility to police coercion, mere examination of the confessant's state of mind can never conclude the due process inquiry." *Colorado v. Connelly,* 479 U.S. 157, 164–65, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986) (suspect whose mental illness impaired his ability to make free and rational choices, did not thereby make involuntary confession in absence of official misconduct).

In cases in which the police misconduct is not unmistakably coercive, the suspect's characteristics are relevant to show an ability to resist pressure.

The Supreme Court has considered whether the suspect had a less than average ability to resist pressure because of:

• physical fatigue, *Ashcraft,* 322 U.S.at 143, 64 S.Ct. 921;

• youth, *Gallegos v. Nebraska,* 341 U.S. 947, 71 S.Ct. 1003, 95 L.Ed. 1371 (1951);

• lack of experience with police, *compare Stein,* 346 U.S. at 156, 73 S.Ct. 1077 (experience), *with Haynes,* 373 U.S. at 503, 83 S.Ct. 1336 (no experience);

• mental illness, *Blackburn v. Alabama,* 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *Fikes,* 352 U.S. at 191, 77 S.Ct. 281;

• lack of education, *compare Crooker,* 357 U.S at 433, 78 S.Ct. 1287 (one year of law school), *with Clewis v. Texas,* 386 U.S.

707, 87 S.Ct. 1338, 18 L.Ed.2d 423 (1967) (fifth grade);

- mental retardation, *Culombe,* 367 U.S.at 568, 81 S.Ct. 1860;

- state-administered drugs, *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963);

- sex, *Lynumn,* 372 U.S.at 528, 83 S.Ct. 917;

- race, *see e.g., Davis,* 384 U.S. at 737, 86 S.Ct. 1761;

- physical injury, *Mincey v. Arizona,* 437 U.S. 385, 98 S.Ct. 2408, 57 L.Ed.2d 290 (1978); *Beecher,* 389 U.S. at 35, 88 S.Ct. 189; and

- physical illness, *Greenwald v. Wisconsin,* 390 U.S. 519, 88 S.Ct. 1152, 20 L.Ed.2d 77 (1968).

In no case do all of these circumstances appear, but in the case before us now a number of them obviously do. The evidence would support findings that the appellant is a poor woman of limited education who has a tenuous grasp of the English language. She was summoned to a government office, accused of wrongdoing, and required to make a written confession. We are not advised whether she was told she could leave, and it could be reasonable for the trial court to find that she did not feel free to leave. We are told that a *Miranda* warning was printed on the form, but we are not told if she read it or could read it. We do not know if the trial court found that she felt free to do anything other than complete the statement in the form that the investigator required. The question of the voluntariness of this statement cannot be resolved until the totality of the circumstances is considered to determine if the State met its burden to prove that the statement was voluntary.

This case illustrates the extreme difficulty that appellate courts have in resolving such issues when there are no findings of fact. If the trial court had found that the statement was voluntary, it would have been required to make written findings.[5] They are no less important when the opposite ruling was made. The statute that requires such findings was enacted at a time when the State had no right to appeal. Now that the State has such a right, it is time for us to require trial courts to make such findings. By indulging the presumption that the judge's one-word ruling can be construed as an implied finding on every factual issue, we have trapped ourselves and the courts of appeals in a process of deciding cases on fictional "facts." This can only result in unjust decisions, today against one party, tomorrow against the other.

My preference would be to vacate the judgement of the Court of Appeals and remand the case to that court with directions that the Court of Appeals (1) order the trial court to make findings of fact and (2) reconsider the case with those findings. But since the Court persists in this presumption that the trial court's ruling implies a finding on factual issues, I would hold that it applies when the trial court excludes evidence as well as when it admits evidence. Considering the trial court's ruling as implied findings on all these issues, I would uphold it and reverse the judgment of the Court of Appeals.

---

5. "In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause." TEX.CODE CRIM. PROC. art. 38.22, § 6.