Opinion issued on April 24, 2003 










In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00731-CR




PATRICIA ANN CRAWFORD, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 400th District Court
Fort Bend County, Texas
Trial Court Cause No. 31862




MEMORANDUM OPINION
          The jury found appellant, Patricia Ann Crawford, guilty of forgery, and the trial
court assessed punishment at 18 months’ confinement. Appellant subsequently
appealed, and on October 31, 2003, this Court issued an order abating the appeal so
that the trial court could make findings of fact and conclusions of law. The trial court
has since made the required findings of fact and conclusions of law and we are now
ready to resolve appellant’s remaining issues on appeal. Appellant’s remaining issues
are (1) whether the evidence presented was legally and factually insufficient to
support appellant’s conviction, and (2) whether the trial court erred in denying
appellant’s requested jury instruction regarding the voluntariness of appellant’s
statement. 
          We affirm.
Facts
          On December 19, 1998, appellant, who was to be married, wrote a check for
$450.00 to Lester Miller, a part-time disc jockey, as payment for his services at her
wedding. Appellant took the check from the checkbook of Ethel Crawford, her
mother-in-law. Appellant signed Ethel’s name on the check. Ethel testified at trial
that she did not give appellant permission to sign the check.
          Before the wedding, Ethel had agreed to pay for various items to be used for
the wedding, and appellant’s parents had agreed to repay Ethel for all her expenses. 
Ethel personally paid for several wedding items, including a cake, flowers, and an
arch, but she testified that she never agreed to pay for a disc jockey and that appellant
had told her that the disc jockey would be paid for by a sponsor.
          Miller testified that appellant gave him the check. He stated that the original
agreement had been for $450.00 in cash, but that when he arrived at the reception,
appellant was waiting for him outside, and was by herself. Appellant told Miller that
she had been given the check by her mother-in-law. Miller accepted the check and
performed at the reception. The next Monday, when Miller tried to cash the check,
the bank informed him that the check could not be cashed because the account had
been closed.
          Ethel testified at trial that the forged check came from a spare checkbook in
one of her drawers in the house. The checkbook with the missing check had been in
the middle of a stack of other checkbooks, and the check written out to Miller had
come from the middle of the checkbook. After Ethel told Miller that it was not her
responsibility to pay him, Miller contacted the District Attorney’s office. The matter
was then turned over to the Rosenburg Police Department for investigation.
          After becoming aware of the investigation, appellant agreed to go to the police
station for an interview on May 20, 1999. Officer Hackett, the interviewing officer,
stated that appellant was a suspect at the time, but that she voluntarily arrived at the
police station for the interview. Appellant and Hackett discussed the case in the
interview room of the police station, and appellant agreed to make a written statement
after she was given a Miranda warning. While appellant was writing her statement,
Hackett briefly left the room, leaving appellant by herself. Appellant wrote a
statement and signed it. After returning to the room, Hackett suggested that appellant
add to the statement that she had signed the check. Appellant did so. The writing is
as follows:
I, Patricia Crawford, state that I took a check from my mother-in-law
(sic) checkbook December 19, 1998, for the DJ Lester Miller, because
I didn’t have the money to pay him, but I am sorry that it happened that
way. But I did pay her back for it, but I am willing to pay Mr. Miller
again personally to clear it up. I didn’t know it was a closed account. 
I did sign it and filled it out.
          After taking the statement, Hackett escorted appellant out of the room and
appellant left. Hackett testified that appellant was never fingerprinted, photographed,
handcuffed, or placed under arrest. 
Sufficiency of the Evidence
          In her first issue, appellant argues that the evidence is legally and factually
insufficient to support her conviction for forgery. Appellant specifically contends
that the State failed to establish that appellant intended to defraud or harm another.
          When reviewing the legal sufficiency of the evidence, we view the evidence
in the light most favorable to the verdict and determine whether any rational trier of
fact could have found the essential elements of the offense beyond a reasonable
doubt. King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). 
          A person commits the offense of forgery if “he forges a writing with intent to
defraud or harm another.” Tex. Pen. Code Ann. § 32.21(b) (Vernon 2003). The
State has the burden of proving there was an intent to defraud. Mooney v. State, 888
S.W.2d 182, 184 (Tex. App.—Houston [1st Dist.] 1994, no pet.). Mere presentation
of a forged instrument is insufficient to prove knowledge and intent. Id. Intent to
defraud may be established through circumstantial evidence. Williams v. State, 688
S.W.2d 486, 488 (Tex. Crim. App. 1985). The State can prove the element of intent
by showing that the defendant falsely represented to others that he was the maker of
the check. Choice v. State, 883 S.W.2d 325, 329 (Tex. App.—Tyler 1994, no pet.). 
Use of deception by a person presenting check is evidence of intent to defraud and
harm. Id. If the State proves that the defendant had knowledge that the check was
forged, proof of intent to defraud is inferred. Williams, 688 S.W.2d at 488.
          Upon review of the record, we conclude that the evidence presented by the
State sufficiently showed appellant’s intent to defraud. Ethel testified that she had
not agreed to pay for a disc jockey, and further testified that appellant had told her
that a sponsor would pay for the disc jockey. The jury heard evidence that appellant
took a check from the middle of a spare checkbook, with the checkbook being in the
middle of a stack of other checkbooks. Ethel stated that she did not sign the check
written out to Miller or give appellant permission to do so. Miller testified that the
original service agreement had been for cash, but that he had “reluctantly” agreed to
take a check from appellant after appellant had met him outside of the reception hall
with no one else around, an occurrence noted by Miller as odd, since she was the
bride. Finally, the jury was shown appellant’s signed and written statement, in which
she admitted to taking the check because she did not have the money to pay Miller,
and to signing the check in the name of Ethel Crawford. All of the above testimony
constitutes some evidence that appellant intended to defraud or harm another. 
Accordingly, we hold that the evidence was legally sufficient to support appellant’s
conviction. 
          In a factual sufficiency determination, we must decide “whether a neutral
review of all evidence, both for and against the finding, demonstrates that the proof
of guilt is so obviously weak as to undermine confidence in the jury’s determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.” King, 29 S.W.3d at 563. We will reverse only if a manifest injustice
has occurred. Id. 
          The evidence presented by the State was not so weak as to undermine
confidence in the jury’s determination. The State presented both evidence of
knowledge of forgery, and evidence of deception by appellant. From this evidence,
the jury was able to properly infer that appellant had an intent to defraud. 
Accordingly, we hold that the evidence was not factually insufficient to support
appellant’s conviction. 
          We overrule appellant’s first issue.
Request for Jury Instruction
          In her second issue, appellant contends the trial court erred in denying
appellant’s requested jury instruction regarding the voluntariness of appellant’s
statement. See Tex. Code. Crim. Proc. Ann. art. 38.22 § 7 (Vernon 2000). 
Appellant argues that, because she was a suspect when she did the interview, and was
in a room that could have been locked, and because Hackett told appellant what had
to be in the signed confession, appellant was entitled to a jury instruction on the issue
of voluntariness. 
          The Texas Code of Criminal Procedure provides that “when the issue [of the
voluntariness of the confession] is raised by the evidence, the trial judge shall
appropriately instruct the jury, generally, on the law pertaining to such statement. 
Tex. Code. Crim. Proc. Ann. art. 38.22 § 7 (Vernon 2000). The issue of
voluntariness is raised only after some evidence is presented that the statement was
not voluntary. Miniel v. State, 831 S.W.2d 310, 316 (Tex. Crim. App. 1992). 
          In determining whether appellant’s evidence raises an issue of the
voluntariness of her confession, we turn to the recent Terrazas v. State decision, in
which an investigator, in obtaining a confession, told defendant “what had to be in
her statement.” 4 S.W.3d 720, 727 (Tex. Crim. App. 1999). In that decision, the
investigator informed the defendant that, because her children were not living with
her, and because she was receiving government benefits, she was in “violation of
policy.” Id. at 722. The investigator informed the defendant of the allegations
against her, advised her of her rights, and told her what had to be in her written
statement. Id. The court held that the investigator’s actions did not constitute the
type of practice that has been held to be inherently coercive as to make a statement
involuntary. Id. at 727 (citing Michigan v. Tucker, 417 U.S. 433, 440-44, 94 S. Ct.
2357, 2362-64 (1974) (interrogation of defendant did not bear any resemblance to the
historical practices at which the right against compulsory self-incrimination was
aimed, “a recurrence of the Inquisition and the Star Chamber, even if not in their stark
brutality”)). The Terrazas court went on to identify inherently coercive practices
such as “subjection to persistent and protracted questioning, threats of mob violence,
unlawful detention incommunicado without advice of counsel or friends, and taking
at night to lonely and isolated places for questioning.” Terrazas, 4 S.W.3d at 727
(citations omitted). The court, in reviewing the actions of the investigator, held that
the investigator’s comments to the defendant, in conjunction with the circumstances
of the interview, did not raise a question of voluntariness as to the confession. 
          Here, appellant contends that an issue of the voluntariness of her confession
was raised because she knew at the interview that she was a suspect, Hackett told her
what needed to be in her confession, and she was in a small room that could have
been locked. 
          The fact that appellant was aware that she was a suspect and was told what had
to be in her statement does not raise the issue of the voluntariness of her statement. 
See Terrazas, 4 S.W.3d at 727. We are also unwilling to include within the scope of
inherently coercive practices a situation where a suspect is interviewed in a room that
the suspect believes might be locked. Just as in Terrazas, there is no evidence in this
case of persistent or protracted questioning, threats of mob violence, unlawful
detention incommunicado without advice of counsel or friends, or any other type of
practice that could be described as inherently coercive. Accordingly, we hold that the
trial court did not err in refusing appellant’s request for a jury instruction on the issue
of the voluntariness of appellant’s statement. 
          We overrule appellant’s second issue.
Conclusion
          We affirm the trial court’s judgment. 
 

                                                             Sherry Radack
                                                             Chief Justice
Panel consists of Chief Justice Radack and Justices Nuchia and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).