NO. 07-06-0336-CR



IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL B



MAY 14, 2007


______________________________



JAMES E. FRY, 



 Appellant


v.



THE STATE OF TEXAS, 



 Appellee

_________________________________



FROM THE 364TH DISTRICT COURT OF LUBBOCK COUNTY;



NO. 2005-409207; HON. BRADLEY S. UNDERWOOD, PRESIDING


_______________________________



Memorandum Opinion


_______________________________



Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

 James E. Fry appeals his conviction for aggravated sexual assault through one
issue. In it, he contends that the trial court erred in failing to instruct the jury about whether
his statement to the police was voluntarily made. We overrule the issue and affirm the
judgment. 

 


 Background

 The case involves appellant's licking of his granddaughter's genitals. Once an
investigation into the allegation began, appellant agreed to undergo a polygraph test and
met with an investigator for that purpose. In preparation for the test, the investigator
allegedly told appellant that he needed to compile questions to ask and solicited
appellant's help. Appellant agreed. Thus, the allegations made by the victim were read
to appellant, and he was asked to respond to them in writing. Prior thereto, he was
mirandized. Indeed, appearing on his written statement are appellant's initials beside the
written Miranda admonitions acknowledging that he was provided them. 

 In responding to the allegations, appellant wrote, among other things, that he had
"licked" the child's "vagina one time" while playing "puppy". (1) So too did he state that the
child touched his penis twice, once while he was exiting the shower and on another
occasion. At trial, appellant endeavored to explain what he meant by and why he made
the statements. For instance, use of the word "vagina" purportedly was not his idea. 
Instead, appellant wanted to say that he licked her "private area," but the officer told him
to call it the "vagina" because that is what the child called it. The incident was accidental,
according to appellant, and he apologized to the child for it. As for the instances when the
girl touched his penis, they allegedly were accidental as well and occurred when she
unexpectedly walked into the bathroom while he was in it and came in contact with the
appendage. 

 Appellant also reiterated that while he wrote the statement, he was not intending to
confess but merely trying to clarify what occurred and assist the investigator in developing
polygraph questions. Yet, nowhere did he claim that he was physically forced to provide
the statement or that the contents of the statement (save for reference to "vagina") were
false, that he did not know the statement would be used against him, that he did not intend
to make the disclosures, that if he had known that the statement was to be used against
him he would not have made it, or that his responses would have differed had he actually
taken the polygraph. (2) Again, he acknowledged that he was simply responding to the
officer's questions in effort to clarify what he believed to be the truth regarding the child's
allegations. 

 Discussion

 When evidence at trial raises an issue regarding the voluntariness of the accused's
confession or written statement, the trial court must instruct the jury that it shall be
disregarded unless it concludes, beyond a reasonable doubt, that the utterance was
voluntarily made. Tex. Code Crim. Proc. Ann. art. 38.22 §§6&7 (Vernon 2005); see also
Mendoza v. State, 88 S.W.3d 236, 239 (Tex. Crim. App. 2002) (stating that when the
evidence presented at trial raises a factual issue as to whether a defendant had been
warned of his rights and had voluntarily waived them, he is entitled to an instruction on the
voluntariness of the statement). Next, a confession is involuntary if the totality of the
circumstances demonstrate that the speaker's decision to speak was not made of his own
free will. Green v. State, 934 S.W.2d 92, 99-100 (Tex. Crim. App. 1996). That the
decision was induced through a misrepresentation by the interrogator is a factor to
consider in the mix but not alone determinable. Id. Again, all depends on the totality of the
circumstances, and the focus lies on whether the police misconduct "was such as to
overbear the will of the accused and bring about a confession not freely determined." Id.

 The totality of the circumstances reveals no evidence suggesting that appellant's
statement was involuntary, as that term is defined above. Nothing indicates that he had
any qualms in speaking to the investigator about the incident. Indeed, he initially met with
the investigator to undergo a polygraph wherein questions would be propounded involving
the truthfulness of the child's accusations and his role, if any, in the assault. In other
words, he came to talk, and no one suggests that his decision to talk via a polygraph was
coerced in any way. Nor does anyone 1) deny that he was mirandized before talking or
2) suggest that the investigator purported to extend to him some type of immunity when
talking before the polygraph was administered. So, that he may have thought his answers
were to be used in drafting questions for the polygraph is of no import; to so believe and
yet agree to answer is nothing short of recognizing that the statement was going to be used
to affect the prosecution in one way or the other. Moreover, that the officer may have told
him of certain words to utilize in the non-custodial exchange is also inconsequential for the
Court of Criminal Appeals held in State v. Terrazas, 4 S.W.3d 720 (Tex. Crim. App. 1999)
that such is not the stuff from which an involuntary statement arises. Id. at 726.

 Simply put, what we have here is a situation wherein the investigator and appellant
may have had in mind different purposes to which his statement would be put. Yet, each
purpose entailed the investigation of the child's claim and use of the comments as a means
of assessing appellant's guilt or innocence. He may not have wanted to confess but that
is a distinction without a difference. After all, he undoubtedly knew that what he was going
to say would be used (at least during the administration of a polygraph) to determine his
culpability, and he talked nonetheless. And, without any evidence showing that he was
granted some type of license to speak without fear of prosecution or that his answers
would have differed had he undergone a polygraph or that he initially appeared against his
will, the trial court was well within its discretion to conclude that his written statement and
its contents were made under appellant's own free will. So, he was not entitled to the
instruction at issue.

 Accordingly, we affirm the judgment of the trial court.

 

 Brian Quinn

 Chief Justice 

 

Do not publish.

 
1. Playing "puppy" consisted of the two making believe that they were puppies chasing and licking each
other.
2. The investigator decided that the polygraph was no longer needed given the tenor of appellant's
written replies.



dmissible under Tex. R. Evid. 803(8). However, appellant does not complain that
the trial court erroneously ruled that the community supervision file was admissible as a
business record, or that the State failed to prove the file as a business record. We
conclude that the trial court did not abuse its discretion in admitting the records as business
records. See Texas Dep't of Public Safety v. Pruitt, 75 S.W.3d 634, 637 (Tex.App.-San
Antonio 2002, no pet.). We overrule appellant's first issue.

 Next, appellant contends that the trial court erred in allowing Watson to testify
regarding lab results contained in appellant's community supervision file. By this
contention, appellant challenges the testimony to prove a violation of the second condition
of appellant's community supervision order. (1) Assuming without deciding, that the trial court
erred in allowing Watson to testify as to the results of the urinalysis lab test, we would then
determine whether appellant was harmed by such error. See Broderick v. State, 35 S.W.3d
67, 74 (Tex.App.-Texarkana 2000, pet. ref'd). The State's first amended motion to revoke
community supervision alleged three separate violations of the third condition, only one of
which was proven by the complained of test results. The other two violations were proven
by appellant's own written admissions of using marijuana and cocaine during the period of
his community supervision. We conclude that the trial court had some evidence, even
without the lab results or testimony regarding the lab results, to find that appellant had
violated his community supervision by using narcotics during the period of his community
supervision. See Herald, 67 S.W.3d at 293; Brumbalow, 933 S.W.2d at 300. Hence, the
trial court did not abuse its discretion in finding that appellant had violated the third
condition of his community supervision by using narcotics. We overrule appellant's second
issue. 

 Appellant's final contention that the Texas Constitution prohibits imprisonment for
debt is foreclosed by Thompson v. State, 557 S.W.2d 521, 525 (Tex.Crim.App. 1977). We
further note that appellant has failed to cite any authority to support his position. See Tex.
R. App. P. 38.1(h). We overrule appellant's third issue.

 Even if appellant succeeded on all three issues presented, appellant does not
dispute the trial court's finding that appellant violated his community supervision by failing
to report monthly as required by his community supervision. Therefore, the trial court did
not abuse its discretion in revoking appellant's community supervision since one violation
is sufficient ground for revocation. See Moore v. State, 605 S.W.2d 924, 926
(Tex.Crim.App. [Panel Op.] 1980). We affirm.


 Mackey K. Hancock

 Justice


Do not publish.
1.