Opinion issued June 24, 2004





 




     

In The
Court of Appeals
For The
First District of Texas




NO. 01-03-00170-CR




ROBERT GLEN DAVIS, Appellant
  
V.

THE STATE OF TEXAS, Appellee




On Appeal from the 184th District Court
Harris County, Texas
Trial Court Cause No. 903461




MEMORANDUM OPINION

          A jury found appellant, Robert Glen Davis, guilty of aggravated sexual assault
of a child. See Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i) (Vernon Supp. 2004). 
After finding true the allegations in an enhancement paragraph that appellant had a
prior conviction for aggravated sexual assault of a child, the trial court assessed
appellant’s punishment at life in prison. See Tex. Pen. Code Ann. § 
12.42(c)(2)(A)(i) (Vernon Supp. 2004) (providing for mandatory life sentence for
repeat offenders). We determine whether (1) the evidence was factually insufficient
to support appellant’s conviction, (2) the trial court erred by denying appellant’s
request for a Daubert hearing, and (3) the trial court erred by failing to instruct the
jury to disregard after having sustained appellant’s objections to improper jury
argument. We affirm.
Background
          On January 13, 2002, the complainant, a three-year-old girl, was staying with
her grandmother because her parents were in the middle of a divorce. The
complainant’s grandmother began to feel ill due to some medical problems that she
was experiencing and decided to have a friend take the complainant to stay with
Brandy McCaslin, the complainant’s uncle’s girlfriend, for the night. Appellant, the
complainant’s grandfather, was living in the same house with McCaslin and several
other persons at that time.
          The complainant arrived at appellant’s house sometime later that day, and, after
she had been put to bed, she was lying in the bed with appellant. At that point, the
complainant was wearing a t-shirt and no underpants. Appellant proceeded to
penetrate the complainant’s vagina with his finger. The complainant told him to stop,
but he would not. The complainant then fell asleep, and, when she woke up,
appellant was not in bed with her anymore. The next afternoon, the complainant’s
mother came to pick her up and to take her back to the complainant’s grandmother’s
house. A few minutes after the complainant’s mother had dropped the complainant
off, the complainant’s grandmother noticed that the complainant looked as if she had
been crying. When the grandmother asked the complainant what was wrong, the
complainant told her that appellant had touched her “down there” and pointed to her
vagina. At that point, the complainant’s grandmother called the complainant’s
mother and, when her mother arrived, the complainant explained appellant’s conduct
to her mother. After hearing the story, the complainant’s mother called the police. 
Factual Sufficiency
          In his third point of error, appellant asserts that the evidence was factually
insufficient to prove that he sexually assaulted the complainant because (1) there was
no physical evidence; (2) the complainant’s demeanor immediately following the
assault was not indicative of her having been sexually assaulted; and (3) her
testimony was (a) inconsistent as to the facts surrounding the assault, (b) inconsistent
with the testimony of other witnesses, and (c) not credible.
          
          In reviewing the evidence on factual sufficiency grounds, all of the evidence
as a whole must be reviewed neutrally, not in the light most favorable to the
prosecution. Johnson v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000). The Court of
Criminal Appeals has recently stated:
There is only one question to be answered in a factual-sufficiency
review: Considering all of the evidence in a neutral light, was a jury
rationally justified in finding guilt beyond a reasonable doubt? 
However, there are two ways in which the evidence may be insufficient. 
First, when considered by itself, evidence supporting the verdict may be
too weak to support the finding of guilt beyond a reasonable doubt. 
Second, there may be both evidence supporting the verdict and evidence
contrary to the verdict. Weighing all evidence under this balancing
scale, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met, so [that] the guilty
verdict should not stand. This standard acknowledges that evidence of
guilt can “preponderate” in favor of conviction but still be insufficient
to prove the elements of the crime beyond a reasonable doubt. Stated
another way, evidence supporting guilt can “outweigh” the contrary
proof and still be factually insufficient under a beyond-a-reasonable-doubt standard. 

Zuniga v. State, No. 539-02, slip op. at 8, 2004 WL 840786, at *7 (Tex. Crim. App.
Apr. 21, 2004). In a factual-sufficiency review, the appellate court should not
substitute its own judgment for that of the fact finder. Jones v. State, 944 S.W.2d
642, 648 (Tex. Crim. App. 1996). 
          Aggravated sexual assault of a child occurs when a person intentionally or
knowingly causes the penetration of the anus or sexual organ of a child by any means. 
Tex. Pen. Code Ann. § 22.021(a)(1)(B)(i).  
A.      Lack of Physical Evidence
          Appellant asserts that the evidence is factually insufficient because the
complainant’s medical examination provided no indication that she had been sexually
assaulted. However, physical evidence is not necessary to prove aggravated sexual
assault of a child; the testimony of the child victim alone may suffice. See Tex. Code
Crim. Proc. Ann. art. 38.07 (Vernon 1979); Perez v. State, 113 S.W.3d 819, 838
(Tex. App.—Austin 2003, pet. ref’d). In addition, the examining physician testified
that it was common not to find physical evidence in cases like this one. As a result,
the evidence was not factually insufficient merely because there was no physical
evidence of the assault.
B.      The Complainant’s Demeanor
          Appellant also contends that the evidence is factually insufficient because there
was testimony that the complainant was laughing and playing on the morning after
the assault and that she told appellant that she loved him. However, the
complainant’s grandmother testified that the complainant’s eyes were red when she
arrived at her grandmother’s house later that day, and it appeared that the complainant
had been crying. In addition, the complainant’s examining physician, Dr. Robyn
Williams, who testified that she had examined hundreds of sexually abused children,
stated that the reaction of a three-year-old girl to sexual abuse “runs the spectrum.” 
Dr. Williams agreed that it would not be uncommon for a young child to be happy
and playful after she had been sexually abused.
C.      The Complainant’s Testimony
          Appellant also asserts that the evidence is factually insufficient because the
complainant made inconsistent statements concerning the facts surrounding the
assault and concerning whether she was touched on the inside or the outside of her
body.
          The complainant testified that she was lying in bed with appellant and two
other children. She further testified that appellant touched her “down below” while
they were lying in bed and indicated that she meant her vagina. She also testified that
he touched her on the inside and she had told him to stop, but that he would not. 
          The complainant’s testimony was corroborated by the testimony of her
grandmother, her mother, and Dr. Williams. The complainant testified that her
grandmother was the first person whom she had told about appellant’s conduct the
day after it happened. The complainant’s grandmother testified that the
complainant’s eyes were red the day after the assault and that it appeared that the
complainant had been crying. The complainant’s grandmother also testified that,
when she asked what was wrong, the complainant told her that “[appellant] touched
me down there” and pointed to her vagina. The complainant’s grandmother further
testified that she called the complainant’s mother after the complainant had told her
what happened. The complainant’s mother testified that when she arrived, the
complainant seemed nervous and told her what had happened in detail. Dr. Williams
also testified that the complainant told her that appellant had touched her with his
finger and that the complainant indicated that she meant that appellant had touched
her vagina.
          Appellant relies on the testimony of Carrie Jo Bullifin, another person in the
house the night of the assault, who testified that the complainant was put into bed
with her brother and no one else, that the complainant took a bath that night, and that
Brandy was at the house. Bullifin also testified that appellant was asleep on the
couch until at least 5:00 a.m. Appellant asserts that the complainant’s testimony is
inconsistent with Bullifin’s testimony because the complainant testified that she was
in bed with appellant and two other children, that she did not take a bath, and that
Brandy was not at the house. Appellant also contends that the complainant admitted
that her father told her what to say when she came to court. 
          However, any inconsistencies in the testimony were for the jury to resolve. See
Bowden v. State, 628 S.W.2d 782, 784 (Tex. Crim. App. 1982). Bullifin admitted on
cross-examination that appellant could have gotten up and gone into another room
and that Bullifin never would have known about it. Although the complainant
initially responded that her father had told her what to say in court, when defense
counsel asked her the question a second time, she responded that no one had told her
what to say. More importantly, the complainant was not inconsistent in her testimony
that appellant penetrated her with his finger. The version of events that the
complainant had expressed to her grandmother, to Dr. Williams, and at trial
consistently showed that appellant had penetrated the complainant with his finger. 
It was the jury’s responsibility to resolve any inconsistencies in the testimony offered
at trial, and it resolved those inconsistencies in favor of the State.
           Appellant also argues that the complainant’s testimony is not credible because
she demonstrated at trial that the depth of appellant’s penetration was four inches and
because it would not have been possible for appellant to have penetrated her that far
and still have left no physical evidence of penetration. The jury determines the
credibility of the witnesses and is entitled to believe some, none, or all of a witness’s
testimony and to disregard the remainder. Sharp v. State, 707 S.W.2d 611, 614 (Tex.
Crim. App. 1986). Consequently, the jury was free to believe that appellant had
penetrated the complainant, even if they did not believe that the depth of the
penetration was four inches.
 
          Accordingly, we hold that the evidence was factually sufficient to support
appellant’s conviction for aggravated sexual assault.
          We overrule appellant’s third point of error.
Daubert Hearing
          In his first point of error, appellant asserts that the trial court erred by twice
denying his request for a Daubert


 hearing to take Dr. Williams on voir dire to
determine the reliability of her expert testimony.
          In Kelly v. State,


 the Court of Criminal Appeals adopted a test for admissibility
of expert testimony that is virtually identical to the test in Daubert. See Nenno v.
State, 970 S.W.2d 549, 560 (Tex. Crim. App. 1998), overruled on other grounds by
State v. Terrazas, 4 S.W.3d 720, 727 (Tex. Crim. App. 1999) (stating that the Kelly
inquiry is “substantively identical to the inquiry mandated by the Supreme Court . . .
in Daubert . . . .”).
          However, we do not need to address the merits of appellant’s contention
because he failed timely to request a hearing under Daubert and Kelly. On redirect
examination, the State began to question Dr. Williams as follows:
          Prosecutor:  Defense counsel kind of went through a litany of possible traumas
to the female genitalia that might exist in a case; isn’t that
correct?
 
          Williams:    That’s correct.
 
          Prosecutor:  Sexual abuse, does sexual abuse of a child even as young as three
years of age always results [sic] in trauma to the genital area?

          Williams:    No, it does not.
 
          Prosecutor:  In fact, is it more likely or not that there’s going to be trauma to
the vaginal area to a three-year-old girl in a touching case?
 
          Williams:    It is more likely there will be—
 
          Defense:      Your Honor, I’m going to object, number one, on the basis of
Dalbert [sic] and Robinson as to the basis of her opinion, the
theory of her opinion not being qualified. I would ask to take this
witness on voir dire outside the presence of the jury before any
another [sic] questions like this are asked by the prosecutor to
ascertain what the basis for her theory is in answering these
questions. I don’t think she’s qualified, Your Honor, to answer
those questions.
 
          The Court:   Thank you. Your request for a Dalbert [sic] hearings is denied at
this time.

It would appear that defense counsel requested a hearing to determine the basis for
Dr. Williams’s knowledge of the physical damage that could result to a child from the
trauma caused by penetration to the vaginal area. However, on earlier direct
examination, Dr. Williams had already testified as follows:
 
          Prosecutor:  How many exams would you think that you have done on
children in similar situations such as [the complainant]?
 
          Williams:    Several hundred.
 
          Prosecutor:  And would it be uncommon—would it be common for you to
have no abnormal physical findings in a case involving an
allegation of touching with a finger?
 
          Defense:      Your Honor, objection. That is the province of the jury, calls for
speculation on her part. It’s not relevant to these facts as to these
medical records of this young girl and would be bolstering, as
well.
 
          The Court:   That’s sustained. Could you rephrase, please.
 
          Prosecutor:  Based on your training and experience would it be unusual for
you not to find any abnormal physical findings on a touching case
such as this?
 
          Defense:      Same objection, Your Honor.
 
          The Court:   Overruled.
 
          Williams:    It would not be unusual.
 
          Prosecutor:  Why is that?
 
          Williams:    Generally, fondling or touching or even oral-genital contact will
not leave any physical findings. And so—
 
          Prosecutor:  Hypothetically speaking, if this child said that a finger had
penetrated her vaginal area would it still be unusual for you to
find no physical findings?
 
          Williams:    Yes.
 
          Prosecutor:  Okay. Would it be—would it be unusual to find no physical
findings or would it be normal to not have any physical findings?
 
          Williams:    It would be expected for the examination to be normal.
 
          Prosecutor:  Okay. And even if there’s penetration with a finger?
 
          Williams:    Yes.
 
          Prosecutor:  And why is that? Wouldn’t there be some kind of sign that, that
vaginal area had been penetrated by an object?
 
          Williams:    Well, generally those tissues are fairly elastic and it’s mucosal
tissue much like the inside of your mouth so that those tissues
heal very quickly. So even if there had been an abrasion, which
is sort of a scrape or a superficial tear, it would have healed very
quickly.
 
          Prosecutor:  Based on your interview of this witness were you under the
understanding that they had come in directly after this assault or
that it had been a day or two?
 
          Williams:    That it had been a day or two.
 
          Prosecutor:  Would you expect had [sic] that her vaginal area had some time
to heal.
 
          Williams:    Possibly.
 
          Prosecutor:  So based on your training and expertise would you say that this
normal finding that you found in your exam of [the complainant]
in any way rules out the possibility that she was sexually abused?

          Defense:      I’m going to object to that.
 
          The Court:   I’m sorry, which of you is doing the objections?
 
          Defense:      Yes, I’m going to take the doctor on cross, Your Honor.
 
          The Court:   All right. Thank you. I’m sorry, the question, again?
 
          Prosecutor:  The question was: Does a normal finding in the sexual exam of
this child . . . in any way rule out that she was sexually abused?
 
          Williams:    No, it does not.
 
          Defense:      I’ll object to that.
 
          The Court:   Overruled.

At that point in her earlier testimony, Dr. Williams had clearly expressed her
knowledge of vaginal trauma to children due to penetration and her opinion of the
lack of a finding of trauma in the complainant’s case, based on her training and
experience. This is virtually the same line of questioning that later prompted defense
counsel to object and to request a Daubert hearing. In fact, appellant’s counsel
recognized that Dr. Williams had already testified similarly when, after the request
for a hearing was denied, appellant’s counsel also objected on the grounds that the
question had been “asked and answered about four times.” 
          To preserve a complaint for appellate review, a party must make a timely
request, objection, or motion with sufficient specificity to apprise the trial court of the
complaint. Tex. R. App. P. 33.1(a). The party must object as soon as the
objectionable nature of the evidence becomes apparent. See Ethington v. State, 819
S.W.2d 854, 858-59 (Tex. Crim. App. 1991). Because appellant did not object to the
testimony and request a hearing the first time that Dr. Williams testified concerning
the likelihood of vaginal trauma in child sexual assault cases, appellant waived any
error in the denial of the hearing. As a result, we need not address the merits of
appellant’s contention that the trial court erred in denying his subsequent request for
a Daubert hearing because his right to such a hearing had already been waived.
          We overrule appellant’s first point of error.
Closing Argument
          In his second point of error, appellant asserts that the trial court erred by
denying his motion to disregard two statements made by the State during closing
argument after the trial court had sustained appellant’s objections to the statements.
A.      First Objection    
          First, appellant objected to the following remarks that the prosecutor made in
his closing argument:
          Prosecutor:  I want you to think about the land and the country that defense
counsel would have us live in. He would have us live in a country
where a three-year-old child system [sic] does what we tell her to
do. If somebody touches you in the wrong place, you’re supposed
to tell an adult. He would have you live in a country where—
 
Defense:Objection, Your Honor, outside the record. The prosecutor
is testifying.
          The Court:   Sustained.
          Defense:      And, for the record, he’s striking out—
          The Court:   Excuse me. Only one of you should be making objections. Who
will make the objections?
 
          Defense:      I will be making the objections, Your Honor.
 
          The Court:   Thank you.
 
          Defense:      Ask the jury to disregard.
 
          The Court:   Excuse me. Denied.

Appellant asserts that the trial court erred by failing to give an instruction to disregard
the prosecutor’s statement.
          The prosecutor stated that children should tell an adult when someone touches
them in the wrong place. Even if the prosecutor was about to make a statement
outside the record, appellant objected before the prosecutor could finish his statement. 
After the trial court had sustained the objection, the prosecutor abandoned that
argument, and there was thus nothing for the trial court to instruct the jury to
disregard. Consequently, the trial court did not err by denying appellant’s request.
B.      Second Objection
 
          Appellant also asserts that the trial court erred by denying his request for an
instruction to disregard based on this portion of the prosecutor’s closing argument: 
          Prosecutor:  Defense counsel argued there was no medical evidence and that
should be the basis for the acquittal. But think about that, ladies
and gentlemen, our witness, Dr. Williams testified in 60 percent
of cases where the perpetrator admits to the offense of sexual
abuse there’s no physical evidence. That would mean in this
country, if you could find nobody guilty when there’s no physical
evidence, that there’s 60 percent—
 
          Defense:      Objection, Your Honor. Outside the record, improper plea for
law enforcement.
 
          The Court:   Overruled.
 
          Prosecutor:  60 percent of the sex offenders that admit to committing this kind
of offense, we couldn’t try them, we couldn’t get convictions.
 
          Defense:      Objection, Your Honor. Outside the record; improper plea for
law enforcement; asking for a conviction based upon statistics,
not the evidence.
 
          The Court:   Sustained.
 
          Defense:      Ask the jury to disregard.
 
          The Court:   Overruled.

          The approved general areas of argument are (1) summation of the evidence, (2)
reasonable deduction from the evidence, (3) answer to argument of opposing counsel,
and (4) plea for law enforcement. Wesbrook v. State, 29 S.W.3d 103, 115 (Tex.
Crim. App. 2000).
          Dr. Williams had testified earlier that she was aware of studies that showed
that, in 60 percent of child sexual assault cases, when the perpetrator admits to
committing the assault, the abused children have normal physical examinations. 
Conversely, defense counsel asserted during closing argument that the jury should
find appellant not guilty based on the fact that the complainant’s physical
examination showed no signs of sexual abuse. Although appellant objected to Dr.
Williams’s testimony regarding these studies, we have already held that appellant
failed to preserve error as to the admission of that evidence. Therefore, the
prosecutor’s argument that “60 percent of the sex offenders that admit to committing
this kind of offense, we couldn’t try them, we couldn’t get convictions” was based on
evidence admitted at trial, and it answered the arguments of opposing counsel. Thus,
the prosecutor’s argument was not improper, and the trial court did not err in denying
appellant’s request for an instruction to disregard the argument, even though the trial
court had sustained the objection. Indeed, the trial court erred in appellant’s favor by
sustaining his objection.
          We overrule appellant’s second point of error.
 
 
 
 
 
Conclusion
          We affirm the judgment of the trial court.
 
 
      Tim Taft
                                                                         Justice
Panel consists of Justices Taft, Jennings, and Hanks.
Do not publish. Tex. R. App. P. 47.2(b).