Opinion issued October 19, 2006










     






In The
Court of Appeals
For The
First District of Texas




NO. 01-05-01002-CR




LEELAND TYRONE HARRIS, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 185th District Court 
Harris County, Texas
Trial Court Cause No. 1023554




MEMORANDUM OPINION A jury found appellant, Leeland Tyrone Harris, guilty of possession of a
controlled substance, namely cocaine, weighing less than one gram by aggregate
weight.


 The trial court sentenced appellant to two years in state jail, suspended the
sentence, placed appellant on community supervision for five years, and assessed a
$500 fine. In two issues, appellant contends that (1) the evidence was factually
insufficient to support his conviction and (2) the trial court erred by denying
appellant’s motion to suppress custodial statements.
          We affirm.
Background
          The following is a summary of the evidence presented by the State at trial
through the testimony of Houston police officers M. Sinegal and S.L. Eames. 
          Officer Sinegal was working undercover narcotics at a gas station when he saw
appellant give an unidentified man paper money and the man give appellant
something that Officer Sinegal could not identify. The man then stepped through a
hole in a fence behind the gas station and disappeared from Officer Sinegal’s sight. 
Appellant got into a parked car but did not leave the gas station. Officer Sinegal
radioed a marked police patrol unit, which was working with Officer Sinegal and
waiting nearby, to investigate what he had perceived to be an illegal drug transaction
between appellant and the unidentified man. 
          Houston police officer S.L. Eames and her partner, Officer McGivern,
responded to Officer Sinegal’s call. As she approached, Officer Eames noticed that
appellant’s car was filled with smoke. Officer Eames ordered appellant out of the car. 
As appellant got out of the vehicle, Officer Eames heard the sound of metal hitting
the pavement. Officer Eames then saw that a socket wrench had fallen out of the car. 
Officer Eames discovered that the socket wrench was hot because, when she picked
it up, the socket wrench burned her fingers. The socket wrench had a piece of Brillo
pad at its end and burn marks on it, indicating to the officers that the wrench had been
used to smoke crack cocaine. 
          Appellant was placed in the back of the officers’ patrol car. With appellant in
the back seat, the officers drove to a nearby location and parked in a darkened area
between some commercial buildings to await a call from Officer Sinegal. Officer
Sinegal was hopeful that the suspected drug dealer would return to the gas station and
anticipated that the patrol officers would be needed to assist in that apprehension as
well. 
          As the officers and appellant sat in the patrol car, Officer Sinegal’s voice was
heard over the radio. When he heard Officer Sinegal’s voice, appellant insisted on
speaking with him. The patrol officers contacted Officer Sinegal and told him that
appellant requested to speak with him. Officer Sinegal came to speak with appellant,
who was still in the back of the patrol car. Appellant told Officer Sinegal that he was
experiencing a “family separation” and had been living in his car. Appellant offered
to help Officer Sinegal catch a drug dealer if Officer Sinegal would release him that
night. Appellant also admitted that he had been smoking crack cocaine. Officer
Sinegal declined appellant’s offer.
          The police crime lab later tested the substance in the socket wrench. A crime
lab employee testified that the substance was cocaine residue. 
Factual Sufficiency
          In his first issue, appellant challenges the factual sufficiency of the evidence
to support his conviction. “In a factual sufficiency review, we view all the evidence
in a neutral light, both for and against the finding, and set aside the verdict if ‘proof
of guilt is so obviously weak as to undermine confidence in the jury’s determination,
or the proof of guilt, although adequate if taken alone, is greatly outweighed by
contrary proof.’” Vodochodsky v. State, 158 S.W.3d 502, 510 (Tex. Crim. App. 2005)
(quoting Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000)). We consider all
of the evidence weighed by the jury, comparing the evidence that tends to prove the
existence of the elemental fact in dispute with the evidence that tends to disprove it,
but avoiding substitution of our judgment for that of the fact finder. Id. In
conducting a factual-sufficiency review, we must discuss the evidence that, according
to the appellant, most undermines the jury’s verdict. See Sims v. State, 99 S.W.3d
600, 603 (Tex. Crim. App. 2003).
          To convict a defendant for possession of a controlled substance, the State must
show that the defendant knowingly or intentionally possessed the controlled
substance. Seals v. State, 187 S.W.3d 417, 419 (Tex. Crim. App. 2005); see Tex.
Health & Safety Code Ann. § 481.115(a) (Vernon 2003). Appellant contends that
the State did not meet its burden to show that he knowingly possessed the cocaine
found in the socket wrench. To support this contention, appellant relies on his own
trial testimony.
          Appellant testified about the events of the night in question. According to
appellant, he was stranded at the gas station because his car had broken down. 
Appellant explained that he was attempting to reach his brother on the pay telephone
when a man approached him asking to borrow a socket wrench to repair some lawn
equipment. Appellant testified that he loaned the man his wrench and gave him some
change. He told the jury that the man later returned and gave back the socket wrench
and the change. Appellant claimed that he had not looked closely at the wrench after
the man had returned it and thus had not noticed its condition. Appellant stated that,
before Officer Eames and her partner approached, he had been smoking a cigar in his
car. Appellant testified that he had gotten into his car to count the change when the
police came. Appellant explained that he had placed the socket wrench in his lap and
that, when the police removed him from his car, the wrench and change had fallen on
the pavement. 
          Appellant denied that the socket wrench had been hot as Officer Eames
testified. Appellant also denied that he had requested to speak to Officer Sinegal
about entering into a deal whereby appellant would assist the officer in catching a
drug dealer. Rather, appellant testified that the officers had approached him about
entering into such an arrangement, but that he had declined. Appellant denied that
he told Officer Sinegal that he had been living out of his car. Rather, appellant
testified that he was temporarily staying with an acquaintance. Appellant further
denied that he told the officers that he had been smoking crack cocaine. 
          On appeal, appellant argues that the evidence was factually insufficient to
support his conviction because his testimony showed that he did not know that the
socket wrench contained cocaine residue. Appellant characterizes his possession as
“unwitting,” arguing that it occurred “much in the same way one might have
momentary hold of another’s purse, but unless one knew that the third party’s purse
contained some contraband, one cannot argue that this constitutes knowing care,
custody, or control.” Appellant also asserts that, “[i]f, given his circumstances of
essentially having to move to a new place temporarily, there was an item, either
borrowed or loaned or used by someone else for an illicit purpose, in a rather over-stuffed vehicle with numerous personal belongings hastily packed, that does not
establish knowing care and custody of any contraband.” 
          Appellant’s contentions challenging the factual sufficiency of the evidence
depend on appellant’s version of the events. To the extent that appellant’s account
of the events preceding the officers’ taking him into custody contradicted the account
offered by the officers, it was for the jury to resolve these factual discrepancies. See
Johnson, 23 S.W.3d at 7. As the factfinder, the jury was free to believe the officers
and disbelieve appellant.
          In support of his factual sufficiency challenge, appellant also contends that he
made the custodial statements regarding his offer to enter into a deal with Officer
Sinegal and his confession that he had been smoking crack cocaine as “a product of
his fear of being arrested and imprisoned.”


 Though the jury could have reached such
conclusion, it also could have reasonably concluded that appellant made the
statements because he believed that, if he told the truth about smoking crack cocaine,
it would result in his release. 
          Lastly, appellant asserts that the custodial statements did not contain a “specific
admission” that he possessed the cocaine residue. The evidence showed that
appellant admitted to having smoked crack cocaine. From this and the officers’ other
testimony, the jury could have inferred that appellant possessed the cocaine residue
found in the socket wrench.
          Viewing all of the evidence in a neutral light, we conclude that the proof of
appellant’s guilt “is [not] so obviously weak as to undermine confidence in the jury’s
determination,” nor is it “greatly outweighed by contrary proof.” Id. at 11; see
Vodochodsky, 158 S.W.3d at 510. We hold that the evidence was factually sufficient
to support appellant’s conviction.
          We overrule appellant’s first issue.
Admissibility of Custodial Statements
          In his second issue, appellant contends that the trial court erred in denying his
motion to suppress his custodial statements regarding his offer to assist Officer
Sinegal in catching a drug dealer and his confession that he had been smoking crack
cocaine. At the conclusion of the suppression hearing, the trial court orally found that
appellant was in custody at the time he made the statements that he sought to
suppress, but also found that the statements were not made as a result of interrogation. 
In addition, the trial court orally found that no evidence had been presented to
indicate that the statements were made involuntarily. Citing the Fifth and Fourteenth
Amendments to the United States Constitution, appellant contends that the statements
should have been suppressed because (1) the police elicited the statements during a
custodial interrogation without first advising appellant of his Miranda rights and (2)
the statements were not made voluntarily. See U.S. Const. amends. V, XIV.
A.      Standard of Review
          We review the trial court’s ruling on a motion to suppress for an abuse of
discretion. Balentine v. State, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002) Guzman
v. State, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997). The trial court is the sole
trier of fact and judge of witness credibility and may believe or disbelieve all or part
of a witness’s testimony. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000). 
Thus, we give almost total deference to the trial court’s determination of historical
facts supported by the record, especially when the findings are based on an evaluation
of credibility and demeanor. Guzman, 955 S.W.2d at 89. 
          In contrast, we review de novo mixed questions of law and fact that do not turn
on an evaluation of credibility and demeanor. Id.; Balentine, 71 S.W.3d at 768. We
must view the record and all reasonable inferences therefrom in the light most
favorable to the ruling on the suppression motion, and sustain the ruling if it is
reasonably supported by the record and is correct under any theory of law applicable
to the case. Villarreal v. State, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). 
B.      Custodial Statements Without Miranda Warning
          In Miranda v. Arizona, the United States Supreme Court held that “the
prosecution may not use statements, whether exculpatory or inculpatory, stemming
from custodial interrogation of the defendant unless it demonstrates the use of
procedural safeguards effective to secure the privilege against self-incrimination.” 
384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). Here, the State acknowledges that
appellant was not Mirandized before the statements were made and that appellant was
in custody at the time; however, it contends that the statements did not arise from an
interrogation.
          1.       Actual Interrogation
          Appellant contends that he was subject to interrogation when he made the
statements because the statements were made in response to the officers’ inquiries,
particularly the officers’ request that appellant assist them in catching a drug dealer. 
In contrast to appellant’s testimony, the officers testified that they did not question
appellant before he made the statements. Officer Eames stated that, when appellant
heard Officer Sinegal’s voice on the police radio, appellant insisted on speaking with
Officer Sinegal. Officer Eames testified that she radioed Officer Sinegal and told him
that appellant insisted on speaking with him. Officer Sinegal stated that he went to
the patrol car where appellant was seated. According to Officer Sinegal, it was
appellant who proposed that he assist in capturing a drug dealer in exchange for his
release. Officer Sinegal testified that he never enters into such agreements with
suspects and did not accept appellant’s offer. 
          Appellant argues that the officers’ testimony was not credible because, given
the circumstances, “[i]t makes far more sense” that the officers were trying to recruit
appellant to assist them. He contends that it would have been more rational for the
officers to have taken appellant directly to jail rather than to park and await Officer
Sinegal’s call. Appellant also contends that it would have been logical to utilize him
because Officer Sinegal indicated that he was eager to arrest the drug dealer operating
at the gas station.
          The officers testified that the patrol unit was working in tandem with Officer
Sinegal who was working undercover. The evidence showed that the purpose of the
patrol unit was to wait nearby until they heard from Officer Sinegal. Once Officer
Sinegal radioed, the patrol unit would respond and take the suspect identified by
Officer Sinegal into custody. This allowed Officer Sinegal to remain undercover. 
The chain of events in this case is consistent with the officers’ explanation of how the
operations worked that night.
          Importantly, as the fact finder, the trial court was free to believe the officers’
testimony and disbelieve that of appellant. The officers’ testimony supports the
finding that no actual interrogation occurred. We conclude that appellant’s claim that
the officers solicited the statements by asking appellant to assist them in arresting a
drug dealer does not establish that the trial court abused its discretion when it denied
appellant’s motion to suppress. 
          2.       Functional Equivalent of Interrogation
          Appellant also contends that, even if the statements were not made as a result
of actual interrogation, the statements were a product of coercive interrogation
procedures. The crux of appellant’s argument is that the environment in which he
made the statements amounted to the functional equivalent of an interrogation. 
          The United States Supreme Court discussed the concept of the functional
equivalent of interrogation in Rhode Island v. Innis, 446 U.S. 291, 100 S. Ct. 1682
(1980). In this regard, the Court opined,
Miranda safeguards come into play whenever a person in custody is
subjected to either express questioning or its functional equivalent. That
is to say, the term “interrogation” under Miranda refers not only to
express questioning, but also to any words or actions on the part of the
police (other than those normally attendant to arrest and custody) that
the police should know are reasonably likely to elicit an incriminating
response from the suspect. . . . A practice that the police should know
is reasonably likely to evoke an incriminating response from a suspect
thus amounts to interrogation. But, since the police surely cannot be
held accountable for the unforeseeable results of their words or actions,
the definition of interrogation can extend only to words or actions on the
part of police officers that they should have known were reasonably
likely to elicit an incriminating response.

Id. at 300–02, 100 S. Ct. at 1689–90 (citations omitted).
          In this case, it is undisputed that, with appellant in the back of the patrol car,
Officer Eames and her partner drove to a nearby “dark alley” and parked with
appellant handcuffed in the back seat. Appellant contends that the statements that he
sought to suppress were the subject of interrogation because he was placed “in an
uncomfortable and fearsome state such that he would have ‘blurted out’ something
in an attempt to avoid a more fearful result.” The relevant inquiry here is whether
appellant’s being handcuffed in the back of the patrol car while he and the uniformed
officers sat in a “dark alley” amounted to the functional equivalent of interrogation. 
We conclude that it does not.
          In Innis, the Supreme Court held that two officers’ conversation in the presence
of the defendant regarding the possibility that a handicapped child would find the gun
that the defendant had used to commit a murder and a robbery did not constitute
interrogation in violation of Miranda. Innis, 446 U.S. at 302–03, 100 S. Ct. at
1689–90. The Innis court excluded from the definition of interrogation words or
actions “normally attendant to arrest and custody.” Id. at 301, 100 S. Ct. at 1689–90.
          Beyond the environment in which the statements were made and his own
alleged fears, appellant points to no circumstances that were likely to elicit an
incriminating response. Officer Eames testified that neither she nor Officer Sinegal
ever threatened appellant nor does appellant claim that he was expressly threatened. 
Officer Sinegal testified that his objective that night was to arrest a known drug
dealer. The gas station was a known drug venue. The officers testified that Officer
Eames and her partner were working with Officer Sinegal on the undercover narcotics
operation. Officer Sinegal called the patrol units to come to investigate appellant
because Officer Sinegal did not want to reveal that he was an undercover officer. 
          Officer Eames explained that, after taking appellant into custody, she and her
partner parked in a nearby, dark location with appellant handcuffed in the back seat
to await Officer Sinegal’s call to assist in the arrest of the drug dealer at the gas
station. Officer Eames also testified that they were detaining appellant until such
time that Officer Sinegal could decide whether to formally arrest him. 
          Though the circumstances presented an opportunity for appellant to make the
statements, nothing in the record indicates that the officers should have known that
the circumstances under which appellant made the statements were reasonably likely
to elicit an incriminating statement. See id. at 302–03, 100 S. Ct. at 1690–91. The
officers testified that the patrol officers were working with Officer Sinegal as part of
an undercover operation to catch a drug dealer. As the fact finder, the trial court was
entitled to believe the officers’ testimony. Under these facts, the officers’ holding of
appellant in the back of the patrol car in a secluded location, so as not to be seen by
potential suspects, until Officer Sinegal needed them to apprehend the drug dealer,
could also be viewed as normally attendant to arrest and custody. 
          In sum, the officers’ holding of appellant handcuffed in the back of the patrol
car in a dark location was not the functional equivalent of interrogation. The record
supports the trial court’s determination that no interrogation occurred. Thus,
appellant’s argument that the environment in which he made the statements was the
functional equivalent of interrogation does not demonstrate that the trial court abused
its discretion in denying his motion to suppress.



          3.       Voluntariness of Statements
          Appellant also contends that the trial court abused its discretion by denying his
motion to suppress because his statements were not voluntarily given. Appellant
again cites the circumstances under which he gave his statements. Appellant avers,
“When a person is taken, handcuffed and helpless, to a dark alley outside of public
view by two armed police officers and other undercover officers show up and begin
to badger one into making some form of admission, one could hardly say the
atmosphere was ‘voluntary.’” 
          We determine the voluntariness of a statement based on an examination of the
totality of the circumstances under which it was obtained. Creager v. State, 952
S.W.2d 852, 855 (Tex. Crim. App. 1997). A statement is involuntary “only if there
was official, coercive conduct of such a nature that any statement obtained thereby
was unlikely to have been the product of an essentially free and unconstrained choice
by its maker.” State v. Terrazas, 4 S.W.3d 720, 723–24 (Tex. Crim. App. 1999). 
          As discussed, it is undisputed that the patrol officers drove to a nearby dark
location with appellant handcuffed in the back seat. It is also undisputed that Officer
Sinegal came to the parked patrol car to speak with appellant. The officers denied
that appellant was threatened or “badgered” into making the statements. Rather, the
State presented testimony that appellant heard Officer Sinegal’s voice on the police
radio and then insisted on speaking with him. Once Officer Sinegal arrived at the
patrol car, it was appellant who proposed that he assist the officers in catching a drug
dealer in exchange for being released. As part of this discussion, appellant
volunteered that he had been smoking crack cocaine. 
          Here, the trial court was entitled to believe the officers’ testimony and
disbelieve that of appellant, regarding the factual dispute. See Alvarado, 912 S.W.2d
at 211. Under these facts, it was appellant’s hearing Officer Sinegal’s voice on the
radio that was the catalyst for his statements, not the environment in which they were
made. Moreover, given the context of the undercover narcotics operation, appellant’s
being held handcuffed in the back of the patrol car in a dark location was not alone
“coercive conduct of such a nature that any statement obtained thereby was unlikely
to have been the product of an essentially free and unconstrained choice by its
maker.” Terrazas, 4 S.W.3d at 723–24. Thus, appellant’s contention that his
statements were involuntary does not demonstrate that the trial court abused its
discretion in denying his motion to suppress. 
          We hold that the trial court did not abuse its discretion by denying appellant’s
motion to suppress. Appellant’s second issue is overruled.
 

Conclusion
          We affirm the judgment of the trial court. 




                                                   Laura Carter Higley
                                                   Justice

Panel consists of Justices Nuchia, Jennings, and Higley

Do not publish. Tex. R. App. P. 47.2(b).