**Affirmed as Modified; and Opinion Filed May 22, 2013.**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-11-00777-CR**
**No. 05-11-00778-CR**

**JAMES ARTHUR WILLIAMSON III, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 204th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause Nos. F10-58141-Q and F10-58142-Q**

## OPINION

Before Justices FitzGerald, Fillmore, and Evans
Opinion by Justice FitzGerald

A jury convicted appellant James Arthur Williamson III of sexual assault and evading arrest. On appeal, appellant argues that the trial judge erred by denying his motion to suppress his recorded interview at the police station after his arrest. He also argues that the judgments contain clerical errors. We modify the judgments and affirm them as modified.

### I. BACKGROUND

The evidence at trial showed the following facts leading up to appellant's arrest. The complainant testified that she was twenty years old at the time of the incident. During the evening of July 15, 2010, she and some friends went to downtown Dallas to go to a club. The complainant had already had too much to drink before the group arrived at the club, and by the

time they arrived at the club, she could barely walk. The last thing she could remember about the evening was standing in line to enter the club.

One of the complainants' friends testified that they decided complainant was too drunk to go to the club, and that they decided to take her back to her car. Appellant approached the group and offered to help, and they let him help take the complainant back to her car. Another witness testified that he was a limousine driver, and that he was in the area at the time of the incident. He testified that he saw appellant carrying the complainant over his shoulder like a "caveman," and that he thought it was strange because the way he was carrying her was causing her dress to come up and her top to come down. He offered appellant his jacket to cover the complainant up, but appellant declined. He saw appellant put the complainant into a car "like a bag of groceries," and the complainant appeared to be unconscious. He looked away, and when he looked back towards the car, appellant was gone and two young women were crossing the street, apparently going back to a club. About fifteen minutes later, he saw two police officers by the car. They tapped on the window, and a man got out of the car. The man appeared to pulling up his pants or zipping up his pants. He talked to the officers, then took a swing at one of them and ran away.

Police officer Jessica Near testified that she was on bicycle patrol with her partner, officer Brad Riede, on the night in question. She was riding through a parking lot in downtown Dallas shortly after midnight when she looked through a car's windshield and saw what she thought was two people having sex in the backseat. She called Riede over and opened the car door. She saw appellant in the car with his pants down to his knees. She told appellant to get out of the car, and she saw that the complainant appeared to be unconscious. Appellant got out of the car, pulled his pants up, and eventually complied with Near's order to put his hands on the car. Near then told appellant to put his hands behind his back, but when he put his left hand behind his back and Near grabbed it, appellant jerked his hand back in front of him. Riede

–2–

attempted to grab appellant and Near went for her mace, but appellant spun away from Riede and knocked Near down. Near testified that she did not believe any of the mace got on appellant. Appellant then ran away, and Riede went after him while Near stayed with the complainant.

Riede also testified at trial. He testified that he did not think Near maced appellant because Riede was very close to appellant and would have been maced as well. Riede did not get any mace on him. Riede caught up to appellant after chasing him about half a block, and Riede knocked appellant down with his baton. Riede ordered him to lie on his stomach with his hands behind his back, and he told appellant that he was under arrest. Instead, appellant got up and started running again with Riede in pursuit. When appellant saw some police officers approaching from the opposite direction, he turned back towards Riede, who again knocked him down with his baton. Appellant was "flailing around on the ground," making it difficult for Riede to handcuff him. Riede then backed away from appellant and hit him with his baton several times on his left arm and left leg. Then two other officers joined Riede, and they were able to subdue and handcuff appellant. Appellant showed no signs of being maced, such as watery eyes, a runny nose, difficulty breathing, or inability to speak. Appellant was examined by paramedics, who decided that appellant did not need to go to the hospital.

Appellant was taken to a police station. Detective Michael Kemp testified that he read appellant his *Miranda*[1] rights and proceeded to interview him. The interview was videotaped. Kemp testified that appellant did not appear to be under the influence of alcohol or drugs, and that appellant did not appear to need medical attention. During the interview, appellant admitted that he licked the complainant's vagina, that he put his finger inside her vagina, and that his penis touched her vagina. After the interview, appellant was taken to jail. Riede testified that appellant did have a head injury and that he received two staples in his head at the jail.

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

By separate indictments, appellant was indicted for sexual assault and for evading arrest. In each case he filed a motion to suppress all statements made by appellant at the time of his arrest and afterwards. The trial judge held a single hearing on both motions to suppress. The judge viewed the video of the interview with appellant. No other evidence was offered or admitted at the suppression hearing. After hearing argument from both sides, the trial judge denied the motions to suppress, and the video was admitted into evidence at trial. The jury found appellant guilty of both counts. The punishment phase of the trial was conducted without a jury. The trial judge sentenced appellant to twenty years' imprisonment on the evading-arrest charge and thirty years' imprisonment on the sexual-assault charge.

Appellant timely appealed. He raises two issues on appeal.

## II. MOTION TO SUPPRESS

In his first issue on appeal, appellant argues that his statements during the recorded interview were involuntarily made, and thus that the trial judge erred by overruling his motion to suppress.

### A. Standard of review and applicable law

We review the trial judge's determination as to the voluntariness of a confession under an abuse-of-discretion standard. *Delao v. State*, 235 S.W.3d 235, 238 (Tex. Crim. App. 2007). This is a bifurcated standard of review under which we give almost total deference to the trial judge's determination of historic facts and any mixed questions of law and fact that depend on the credibility of witnesses, but we give de novo review to pure questions of law and mixed questions that do not depend on credibility determinations. *Martinez v. State*, 348 S.W.3d 919, 922–23 (Tex. Crim. App. 2011). We review the record as it existed at the time of the suppression hearing. *O'Hara v. State*, 27 S.W.3d 548, 551 (Tex. Crim. App. 2000); *Hooper v. State*, No. 05-05-00390-CR, 2006 WL 620251, at *2 n.3 (Tex. App.—Dallas Mar. 14, 2006, pet.

–4–

ref'd) (mem. op., not designated for publication).[2]  Because the trial judge based her ruling solely on the contents of the video recording of the appellant's interrogation, there were no credibility determinations to be made, and our review is de novo.  *See Martinez*, 348 S.W.3d at 922–23; *Jackson v. State*, No. 03-11-00826-CR, 2012 WL 4780654, at *4 (Tex. App.—Austin Oct. 5, 2012, no pet.) (mem. op., not designated for publication) (reviewing suppression ruling de novo because appellant "relied solely on the events within his recorded interrogation" in his motion to suppress).

"A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion, under the rules hereafter prescribed."  TEX. CODE CRIM. PROC. ANN. art. 38.21 (West 2005).  The court of criminal appeals has identified three distinct legal theories under which a statement can be ruled involuntary and thus inadmissible: (1) general involuntariness under article 38.22, section 6 of the code of criminal procedure, (2) *Miranda*, as expanded in sections 2 and 3 of article 38.22, and (3) the Due Process Clause.  *Oursbourn v. State*, 259 S.W.3d 159, 169 (Tex. Crim. App. 2008).  This case involves the first *Oursbourn* theory of involuntariness.  That theory can involve police overreaching, but police overreaching is not essential to the claim.  *Id*. at 172.  Factors that could be relevant to a general-voluntariness inquiry include illness, intoxication, effects of medications, youth, mental retardation, and threats.  *Id* at 170–73.  These factors are usually not enough, by themselves, to render a statement inadmissible.  *Id*. at 173; *see also Leza v. State*, 351 S.W.3d 344, 352–53 (Tex. Crim. App. 2011) (upholding trial court's conclusion that confession was voluntary even though some evidence showed defendant injected heroin just before his arrest).

---

[2] We may review the evidence adduced at trial if the parties consensually relitigate the suppression issue at trial.  *Turrubiate v. State*, No. PD-0388-12, 2013 WL 1438172, at *2 (Tex. Crim. App. Apr. 10, 2013).  That did not happen in this case, so our review will be limited to the evidence before the judge at the suppression hearing—that is, the video of the interview itself.

When a defendant presents evidence raising a voluntariness question, the State must controvert that evidence and prove voluntariness by a preponderance of the evidence. *State v. Terrazas*, 4 S.W.3d 720, 725 (Tex. Crim. App. 1999). The State is not put to its burden unless the defendant presents evidence that raises a voluntariness question. *Id.* A confession is involuntary if, under the totality of the circumstances demonstrates that the confessor did not make the decision to confess of his own free will. *Morales v. State*, 371 S.W.3d 576, 583 (Tex. App.—Houston [14th Dist.] 2012, pet. ref'd.)

**B.     Application of the law to the facts**

As previously noted, the only evidence presented at the suppression hearing was the video of the interview itself, so we will limit our review to that evidence. Appellant's theory is that the video shows that his statements were involuntary because he was in pain from being sprayed with mace and from being beaten and knocked down by officer Riede during appellant's escape attempt. Assuming that the video satisfied appellant's threshold burden of raising a question about voluntariness, we conclude that the trial judge did not err by concluding that the video satisfied the State's burden of proving voluntariness by a preponderance of the evidence.

The video shows appellant in a small room for a total of about two hours and forty-five minutes. Based on statements made by a police detective on the video, the video starts at about 2:15 a.m. on July 16, 2011. At first, appellant was handcuffed, but a police officer removed the handcuffs within a minute of the beginning of the video. Appellant asked for water, which was promptly given to him. After a few minutes, appellant removed his shirt with his right hand only. Appellant was left alone for about half an hour. Then detective Kemp entered the room at about 2:45 a.m. and read appellant his rights. Appellant said that he understood his rights, and Kemp proceeded to interview him for about thirty-five minutes. Kemp left at about 3:20 a.m. During the next hour and forty minutes, police officers entered the room a few times for various

reasons. One obtained appellant's contact information; another took swab samples from appellant's hand and penis. Kemp came back to take some photographs of appellant. Appellant was taken away at about 5:00 a.m.

As appellant points out and the State agrees, the video does tend to show that appellant was in some degree of discomfort. He plainly favored his left arm and left leg, frequently rubbing them and wincing. The video also tends to support appellant's assertion that he was cold, in that the sound of his teeth chattering is occasionally audible. Appellant had some difficulty standing up from his chair. However, the video does not indicate that appellant was suffering from any lingering aftereffects from being maced; although appellant rubbed his eyes several times during the video, he did not do so excessively, nor did he complain to any police officers that his eyes or nose were burning or running because of the mace. Nor did he appear to have any trouble breathing. He was lucid and coherent during detective Kemp's interview, and he denied that he was drunk or had used any drugs that night. When a different police officer asked appellant if he had any medical problems, he shook his head. Appellant was able to give his social security number twice during the course of the video, and he was also able to give his telephone number. Moreover, despite his discomfort, he fell asleep once or twice during extended periods when he was left alone in the room. Given the totality of the circumstances of the interview, we conclude that the State showed by a preponderance of the evidence that appellant's statements during the course of the interview were made voluntarily and of his own free will.

This case is similar to *Jackson v. State*, No. 03-11-00826-CR, 2012 WL 4780654 (Tex. App.—Austin Oct. 5, 2012, no pet.) (mem. op., not designated for publication). Jackson was arrested and interrogated after committing a robbery, crashing a car in a high-speed chase, and being treated for his injuries at a hospital. *Id*. at *2. The video of his interrogation was admitted

–7–

at trial over his motion to suppress. *Id*. at \*4. The video showed that Jackson was put in the interrogation room at about 6 a.m. and was left alone for about an hour before a detective entered the room and interviewed him for about twenty minutes. *Id*. at \*5. Jackson argued that his confession was involuntary because he was fatigued, hungry, injured, and left alone in a small room for some time, and because the detective suggested Jackson might get a lighter sentence if he was honest and apologized for the robbery. *Id*. at \*6. The court of appeals rejected his argument:

> Although Jackson was arguably tired during the interrogation, the video shows that he was alert, coherent, and could answer the detective's questions. The detective's questioning lasted less than twenty minutes, and at no time was the detective threatening or overbearing. . . . Therefore, we conclude that Jackson's confession was voluntary, and the trial court did not err in denying Jackson's motion to suppress the confession.

*Id*. (citation omitted). In the instant case, although appellant was in some discomfort, he was alert, coherent, and could answer detective Kemp's questions. Kemp was never threatening or overbearing, and the interview lasted only about thirty-five minutes. Accordingly, we conclude that appellant's statement were voluntary, and we reject his first issue on appeal.

### III. CLERICAL ERRORS

In his second issue on appeal, appellant points out that the judgments erroneously recite that his punishment was assessed by a jury. The record reflects that the trial court determined punishment. Appellant asks us to correct the errors. The State agrees that the judgment should be reformed. We have the power to correct the trial court's judgment to make the record speak the truth when we have sufficient information to do so. TEX. R. APP. P. 43.2(b); *Turner v. State*, No. 05-08-00492-CR, 2009 WL 1959240, at \*3 (Tex. App.—Dallas July 9, 2009, no pet.) (mem. op., not designated for publication). Accordingly, we modify the trial court's judgments to reflect that the trial court, not the jury, assessed punishment.

## IV. CONCLUSION

We affirm the trial court's judgments as modified.

_____
KERRY P. FITZGERALD
JUSTICE

Do Not Publish
Tex. R. App. P. 47

110777F.U05



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JAMES ARTHUR WILLIAMSON III,
Appellant

No. 05-11-00777-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F10-58141-Q.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:  The section labeled "Punishment Assessed By" is modified to read "JUDGE" instead of "JURY."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered May 22, 2013.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE



# Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JAMES ARTHUR WILLIAMSON III,
Appellant

No. 05-11-00778-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 204th Judicial District
Court, Dallas County, Texas
Trial Court Cause No. F10-58142-Q.
Opinion delivered by Justice FitzGerald.
Justices Fillmore and Evans participating.

Based on the Court's opinion of this date, the judgment of the trial court is **MODIFIED** as follows:  The section labeled "Punishment Assessed By" is modified to read "JUDGE" instead of "JURY."

As **MODIFIED**, the judgment is **AFFIRMED**.

Judgment entered May 22, 2013.

/Kerry P. FitzGerald/
KERRY P. FITZGERALD
JUSTICE